# Illinois Official Reports

## Appellate Court

*People v. Steele*, 2014 IL App (1st) 121452

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. RODNEY STEELE, Defendant-Appellant. |
| District & No. | First District, Third Division<br>Docket No. 1-12-1452 |
| Filed<br>Rehearing denied | September 30, 2014<br>October 10, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | On appeal from defendant's convictions for aggravated battery to a peace officer and three merged counts of aggravated fleeing and eluding a peace officer arising from an incident in which he was stopped at a late-night traffic safety check for a seat belt violation, but he sped away rather than pull aside so a citation could be written and, in the course of fleeing, an officer was thrown from defendant's car into oncoming traffic, the appellate court reduced his aggravated battery conviction to battery based on the State's failure to present sufficient evidence of "great bodily harm," two of the aggravated fleeing and eluding convictions were vacated due to the absence of evidence that he was driving 21 miles per hour over the speed limit and that he disobeyed traffic signals, and the cause was remanded for resentencing on the battery conviction; furthermore, the appellate court rejected defendant's contention that his counsel was ineffective in dealing with the evidence related to the injured officer and found that the trial court did not err in failing to *sua sponte* conduct a *Krankel* hearing. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 11-CR-11782; the Hon. James B. Linn, Judge, presiding. |
| Judgment | Affirmed in part, vacated in part and modified in part; cause remanded for a new sentencing hearing. |

Counsel on
Appeal

Michael J. Pelletier, Alan D. Goldberg, and Kathleen Weck, all of State Appellate Defender's Office, of Chicago, for appellant.

Anita M. Alvarez, State's Attorney, of Chicago (Alan J. Spellberg, Christine Cook, and Mary Beth Kinnerk, Assistant State's Attorneys, of counsel), for the People.

Panel

JUSTICE HYMAN delivered the judgment of the court, with opinion. Presiding Justice Pucinski and Justice Lavin concurred in the judgment and opinion.

**OPINION**

¶ 1    In June 2011, Chicago police conducted a late-night traffic safety check–pulling cars over for seat belt violations and other obvious infractions–in Chicago's River West neighborhood, a popular late-night area. Defendant, Rodney Steele, was stopped by police officers for failing to wear a seat belt. When asked to pull to the side so a citation could be issued, Steele hit the accelerator, ran into Chicago police officer Alvin Porrata, and sped off. Several police officers pursued Steele to the south side of Chicago, where he ditched the car and was later caught on foot.

¶ 2    Steele was charged with two counts of attempted murder (720 ILCS 5/8-4(a), 9-1(b)(1) (West 2010)) (counts I and II), one count of aggravated battery (720 ILCS 5/12-4 (West 2010)) (count III), and three counts of aggravated fleeing and eluding a peace officer by attempting to elude the police at a rate of speed at least 21 miles per hour over the legal speed limit (625 ILCS 5/11-204.1(a)(1) (West 2010)) (count IV), causing bodily injury to any individual (625 ILCS 5/11-204.1(a)(2) (West 2010)) (count V), and disobeying two or more official traffic control devices (625 ILCS 5/11-204.1(a)(4) (West 2010)) (count VI).

¶ 3    Officer Porrata was taken to the hospital and discharged a few hours later. Although Porrata had been thrown from the car into oncoming traffic, his hospital discharge report stated he was treated only for bruises to his knees and arm. At trial, however, Porrata testified, over defense counsel's objection, that he tore ligaments in both knees and in his right shoulder and needed surgery to remove bone fragments from his shoulder. After a bench trial, Steele was acquitted on the attempted murder charge but convicted of aggravated battery and aggravated fleeing and eluding a peace officer and received concurrent sentences of nine years and three years, respectively.

¶ 4    Steele contends his conviction for aggravated battery should be reversed because the State failed to prove beyond a reasonable doubt that he intended to cause great bodily harm to Porrata, where the evidence showed him trying to flee the scene and not injure the officer. Alternatively, Steele argues the State failed to prove great bodily harm beyond a reasonable

doubt because the medical evidence showed Porrata only had leg and arm abrasions. He asks us to reduce his aggravated battery conviction from a Class 1 felony conviction to a Class 2 felony conviction.

¶ 5 Steele also contends the trial court erred in allowing Porrata to testify about his injuries because he was not qualified as a medical expert and that his trial counsel was ineffective for not moving for discovery sanctions or asking for a continuance when Porrata's testimony on the severity of his injuries differed from the State's medical evidence provided in discovery. Steele further contends his defense counsel created a *per se* conflict of interest by raising his own ineffectiveness at trial during a posttrial hearing and the case should be remanded either for another motion for a new trial with new counsel or a hearing under *People v. Krankel*, 102 Ill. 2d 181 (1984), to determine if his trial counsel rendered effective assistance. Lastly, Steele asserts two of his three convictions for aggravated fleeing and eluding should be dismissed because the State failed to prove each element of the charged offenses.

¶ 6 We modify in part, affirm in part, and vacate in part. Although the State proved Steele intentionally drove into Porrata causing bodily injuries, it failed to present sufficient evidence that Porrata suffered "great bodily injury." Thus, we reduce his aggravated battery conviction to a battery conviction and remand for resentencing. We affirm Steele's conviction and sentence on one of the aggravated fleeing and eluding a peace officer counts but find the State failed to present sufficient evidence to prove all of the elements on the two other aggravated fleeing and eluding a peace officer counts and vacate those convictions.

¶ 7                                               BACKGROUND

¶ 8 On June 13, 2011, Chicago police officers were conducting a traffic safety checkpoint in the River West area of the city, near the six-corner intersection of Kingsbury Street, Sheffield Avenue and Weed Street. This area contains several late-night bars, restaurants, and clubs. Six to ten uniformed Chicago police officers worked at the checkpoint or were stationed on foot throughout the well-lit intersection. Marked squad cars with emergency lights illuminated took positions at the intersection. When vehicles stopped at the intersection's stop signs, officers approached to check for violations. The officers directed vehicles with violations to a staging area on Weed Street, where citations were issued.

¶ 9 At about 2:10 a.m., Steele, alone in a black Jaguar heading southbound on Kingsbury Street, approached the six-corner intersection. (Although Steele did not own the car and it had been reported stolen, Steele was not charged with possession of a stolen motor vehicle.) Officer Wagner testified that at the intersection, he approached Steele's car from the passenger side and told Steele he was being stopped for failing to wear a seat belt. Wagner then asked for Steele's driver's license and insurance card. Officer Porrata was in front of the Jaguar while other officers stood on all sides. Officer Wagner testified Steele drove slowly while Officer Christopher Rigan, who also was there, testified the vehicle lurched forward and Steele ignored the officers' orders to pull into the staging area. Wagner, having moved to the driver's side, spoke to Steele through the window. He thought Steele was stalling and being evasive so he reached into the car in an attempt to open the driver's side door. That's when Steele pressed the accelerator and ran into Officer Porrata, who landed on the car's hood. Porrata tried to hang on, but as Steele made a hard turn to the left, Porrata flew off the hood and landed in the street underneath a taxicab traveling in the oncoming traffic lane.

¶ 10    Steele fled westbound on North Avenue to the entrance of the Kennedy Expressway and then headed southbound while pursued by Officer Rigan and his partner in an unmarked car with the emergency lights activated. Steele continued onto the Dan Ryan Expressway. Rigan saw him cross over four or five lanes of traffic and exit at 31st Street. Rigan exited at 35th Street and headed north. He found the Jaguar abandoned in a parking lot near the expressway at 31st Street and Wentworth Avenue. Rigan and his partner conducted a grid search of the area and found Steele in a nearby alley. They arrested Steele. He was charged with two counts of attempted first degree murder (720 ILCS 5/8-4(a), 9-1(b)(1) (West 2010)); one count of aggravated battery (720 ILCS 5/12-4(a) (West 2010)); and three counts of aggravated fleeing or attempt to elude a peace officer while (1) traveling at least 21 miles per hour over the legal speed limit, (2) causing bodily injury, and (3) disobeying two or more official traffic control devices (625 ILCS 5/11-204.1(a)(1), (2), (4) (West 2010)).

¶ 11    Steele waived his right to a jury, and during his bench trial, Porrata, Wagner, Rigan and two eyewitnesses–the taxi driver and his passenger–testified about what occurred that night. Police surveillance videotape captured the incident, which the State admitted into evidence. The witnesses generally agreed on the sequence of events that led to Steele's arrest. Porrata testified that when Steele drove into him, he tried to step out of the way, but Steele stepped on the accelerator and Porrata became pinned to the car's hood. Porrata tried to hold on and felt that he was being sucked under the car. Then Steele sharply turned the car to the left, throwing Porrata underneath an oncoming taxicab.

¶ 12    Porrata stated that before this incident he was an active person and worked out two hours a day for five days a week. Over defense counsel's hearsay objection, Porrata testified that as a result of this incident, he had torn ligaments in both his knees and in his right shoulder and loose bone fragments in his right shoulder. On cross-examination, Porrata acknowledged that the hospital treated him just for elbow and knee abrasions and released him the same morning. He also acknowledged he was not treated for more significant knee or shoulder injuries, nor had he undergone surgery on his knee or shoulder. Steele did not testify.

¶ 13    Following closing arguments, the trial judge acquitted Steele of attempted first degree murder, finding that the State failed to prove Steele intended to kill Officer Porrata. Instead, the court held Steele guilty of aggravated battery of a peace officer causing great bodily harm, noting that Porrata testified he had damaged leg ligaments and was "no longer the athlete that he once was." The trial judge also found Steele guilty on three counts of aggravated fleeing and eluding of a peace officer.

¶ 14    Steele filed a motion asking the trial judge to reconsider his finding as to the aggravated battery charge, arguing Porrata's testimony regarding his torn shoulder and knee ligaments constituted hearsay outside of an exception. Steele's attorney asserted that to prove Porrata suffered great bodily injury the State had to present the testimony of a treating physician. In his motion, Steele also argued the State's evidence regarding Porrata's injuries amounted to a discovery violation because all of the documents, medical records, and transcripts submitted to the defense before trial indicated Porrata only had abrasions on his knee and nothing worse, and that Porrata's testimony was not credible because neither he nor the hospital indicated his injuries were that serious and he was never treated for torn ligaments in his knee or shoulder. As to the fleeing and eluding charges, Steele contended there was no evidence he was driving at least 21 miles per hour over the speed limit and there was no evidence he disobeyed two or more traffic control devices, necessary elements to those offenses.

¶ 15     During the hearing on the motion to reconsider, Steele's attorney told the trial judge that he "may have been ineffective" by failing to point out at trial the discrepancies in the hospital report regarding Porrata's injuries and Porrata's testimony. The trial judge responded there was "no possible way you were ineffective whatsoever" and told defense counsel, "You don't need to argue your own incompetence." At the hearing, trial counsel stated he was "blindsided" at trial by Porrata's testimony regarding torn ligaments and should have received some notice or medical record to support Porrata's testimony.

¶ 16     The trial court denied the motion to reconsider. As to Porrata's testimony regarding his injuries, the trial judge stated, even if Porrata had not said his ligaments were torn, "there was enough about the things that happened to him, the things that he suffered as a result of this incident. How his body felt so much differently and hasn't felt the same since. That would be enough to show great bodily harm." The trial court then proceeded to sentencing. Porrata testified in aggravation that before he was hit by Steele's car, he had been in excellent physical condition but is no longer able to work out like he used to. He stated that after being treated at Northwestern Memorial Hospital he later saw the police department's orthopedic surgeon, who told him he needed surgery on his shoulder. Porrata said he had not yet been able to have the surgery but was on medication for his shoulder pain because the "shoulder is falling apart." The defense presented letters in mitigation. The trial judge then sentenced Steele as a Class X offender under section 5-5-3(c)(8) of the Unified Code of Corrections (730 ILCS 5/5-5-3(c)(8) (West 2010)) to nine years in prison for aggravated battery to a peace officer. The court also merged the three counts of aggravated fleeing and eluding of a peace officer and sentenced Steele to three years on those counts, with the sentences to run concurrently. Steele filed a motion to reconsider the sentence, which the trial court denied. Steele filed a timely notice of appeal.

¶ 17                                    ANALYSIS

¶ 18                                Aggravated Battery

¶ 19     Steele concedes he struck Officer Porrata while fleeing the scene of the traffic safety checkpoint, but contends his conviction for aggravated battery should be reversed or reduced to, at most, reckless conduct because the State failed to prove beyond a reasonable doubt that he intended to cause Porrata great bodily harm. Alternatively, Steele contends that even if the State presented sufficient evidence to show intent, the State failed to prove that Porrata suffered great bodily harm where Porrata's testimony that he tore ligaments in both of his knees and his right shoulder was hearsay and was not supported by the hospital medical records.

¶ 20     To sustain a conviction on criminal charges, the State must prove every element of an offense beyond a reasonable doubt. U.S. Const., amend. XIV; Ill. Const. 1970, art. I, § 2. The court must determine whether "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Emphasis in original.) *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *People v. Cunningham*, 212 Ill. 2d 274, 278 (2004). It is not the court's function to retry the defendant or to substitute its judgment for that of the trial court. *People v. Evans*, 209 Ill. 2d 194, 209 (2004). The trial court is responsible for assessing the credibility of witnesses, determining the appropriate weight to give to testimony, and resolving inconsistencies in the evidence. *Id*. at 211. Reversal is justified when the evidence is "so unsatisfactory, improbable

or implausible" to raise a reasonable doubt as to the defendant's guilt. *People v. Slim*, 127 Ill. 2d 302, 307 (1989).

¶ 21    Under section 12-3(a) of the Criminal Code of 1961 (Code), a battery is committed when a person "knowingly without legal justification by any means (1) causes bodily harm to an individual." 720 ILCS 5/12-3(a)(1) (West 2010). Aggravated battery is, of course, a more serious offense that is separated into two general categories. One category, embodied in subsection 12-4(a) of the Code, creates the offense of aggravated battery by both the nature of the act and its result–"causes great bodily harm, or permanent disability or disfigurement"–and it is that result which elevates the battery to an aggravated battery. 720 ILCS 5/12-4(a) (West 2010). A second category, embodied in subsections 12-4(b), 12-4(c), 12-4(d), 12-4(d-3), and 12-4(d-5), centers only on the nature of the act–a "simple battery" in subsection 12-4(b) and other acts specified in subsections 12-4(c), 12-4(d), 12-4(d-3), and 12-4(d-5)–together with surrounding circumstances, such as the location of the offense or the age, occupation, or physical state of the victim, which elevate the crime to an aggravated battery. For instance, under section 12-4(b)(18) a person commits aggravated battery by committing a battery against someone known "to be an officer or employee of the State of Illinois [or] a unit of local government *** engaged in the performance of his or her authorized duties" (720 ILCS 5/12-4(b)(18) (West 2010)), such as a police officer.

¶ 22                                      Defendant Acted Knowingly

¶ 23    The State charged Steele under section 12-4(a) of the Code. 720 ILCS 5/12-4(a) (West 2010). (The State could have but opted not to charge Steele under section 12-4(b)(18) (720 ILCS 5/12-4(b)(18) (West 2010)) because Porrata was a police officer.) Section 12-4(a) requires the State to prove a defendant intentionally or knowingly caused great bodily harm. 720 ILCS 5/12-4(a) (West 2010). A person acts knowingly if he or she is consciously aware that his or her conduct is practically certain to cause great bodily harm. *People v. Vazquez*, 315 Ill. App. 3d 1131, 1133 (2000). In contrast, a person acts recklessly if he or she consciously disregards a substantial and unjustifiable risk that the victim would be harmed. *People v. Moore*, 358 Ill. App. 3d 683, 688 (2005). Where the defendant denies intent, as here, the State may prove the defendant's intent through circumstantial evidence. *People v. Phillips*, 392 Ill. App. 3d 243, 259 (2009). Intent can be inferred from the surrounding circumstances, the defendant's words, the weapon used, and the force of the blow. *People v. Conley*, 187 Ill. App. 3d 234, 242 (1989).

¶ 24    Steele contends the evidence shows he acted recklessly, but not knowingly or intentionally, when he drove into Porrata because he was attempting to flee the scene and striking Porrata was an inadvertent result of his fleeing. Thus, Steele asserts his conviction for aggravated battery should be reversed or reduced to a Class 2 felony of reckless conduct. We disagree.

¶ 25    The evidence sufficiently supports the trial court's finding that Steele acted knowingly or intentionally. Although, as Steele asserts, no evidence indicates he made threats to the police officers indicating he intended to injure any of them, the circumstances surrounding the incident show he had the requisite intent under section 12-4(a) of the Code. 720 ILCS 5/12-4(a) (West 2010). Testimony at trial showed that Steele was stopped by police officers and directed to proceed to a staging area so an officer could issue a ticket. Rather than comply with the request, Steele inched the car forward and, after Officer Wagner reached into the car, Steele hit the accelerator, ramming into Porrata, who was standing directly in front of it. Given

the proximity of Officer Porrata and other officers to the car, Steele must have been consciously aware that hitting the accelerator and driving straight at Porrata was practically certain to cause bodily harm. Further, after Porrata became pinned to the hood of the car, Steele made a sharp U-turn that threw Porrata off and into oncoming traffic. Even if Steele had not intended to initially strike Porrata and only intended to flee the scene, his driving maneuver dislodged Porrata from the vehicle's hood and directly into oncoming traffic–showing that he knowingly or intentionally caused bodily harm.

¶ 26                            Great Bodily Harm

¶ 27     Under section 12-4(a) of the Code (720 ILCS 5/12-4(a) (West 2010)), the State was also required to prove that Porrata's injuries amounted to "great bodily harm." Steele contends the State failed to do so because the photographic evidence and medical report showed he suffered nothing more than abrasions to his knees and elbow. Steele asserts that although Porrata testified that he had torn ligaments in both legs and his shoulder, that testimony constitutes inadmissible hearsay and was not corroborated by the medical evidence. Steele further contends that on cross-examination Porrata acknowledged that on the day of the incident, he was told he only sustained bruises and abrasions. Accordingly, in the absence of evidence of great bodily harm, Steel asks that his conviction be reduced from a Class 1 to a Class 2 felony.

¶ 28     As noted, the aggravated battery statute contains two separate categories. A conviction under section 12-4(a) requires proof of "great bodily harm," an injury of a greater and more serious nature than simple battery and centers on the injuries the victim actually received. *In re J.A.*, 336 Ill. App. 3d 814, 815 (2003). In the context of aggravated battery, great bodily harm has been held not susceptible of precise legal definition. *People v. Figures*, 216 Ill. App. 3d 398, 401 (1991). Bodily harm as it relates to ordinary battery requires "some sort of physical pain or damage to the body, like lacerations, bruises or abrasions." *People v. Mays*, 91 Ill. 2d 251, 256 (1982). Great bodily harm then must be more serious or grave than lacerations, bruises, or abrasions. *In re J.A.*, 336 Ill. App. 3d at 817. We review the evidence of great bodily harm in the light most favorable to the State, to determine whether any rational trier of fact could have found the element proven beyond a reasonable doubt. *In re Jessica M.*, 399 Ill. App. 3d 730, 736 (2010).

¶ 29     The State did not prove the element of great bodily harm beyond a reasonable doubt. The medical report from Northwestern Memorial Hospital shows doctors treated Porrata for abrasions on his knees and discharged him a few hours later, at 5:58 a.m. The State entered into evidence a photograph showing Porrata also had abrasions on his right elbow. These injuries alone fall short of constituting great bodily harm. *In re J.A.*, 336 Ill. App. 3d at 817 (great bodily harm more serious or grave than lacerations, bruises, or abrasions).

¶ 30     At trial, Porrata testified to injuries more severe than bruises and abrasions, stating that he had torn ligaments in both knees and in his right shoulder and bone fragments in his right shoulder. While these injuries would likely be sufficient to support a finding that Porrata suffered great bodily harm, that finding here was erroneous because it is not supported by the record. As noted, the hospital report did not indicate Porrata had suffered torn ligaments and, as Porrata acknowledged on cross-examination, he was not diagnosed at that time as having torn ligaments in his knees or shoulder.

¶ 31     During the sentencing hearing, Porrata did state that some time after being treated at Northwestern Memorial Hospital, he saw another doctor who diagnosed him with torn

ligaments and advised him to have surgery on his shoulder. He also said he suffered a lot of pain and took pain medications. But this was not "evidence at the trial" because it was argued as aggravation during sentencing. (Internal quotation marks omitted.) *People v. Ybarra*, 156 Ill. App. 3d 996, 1005 (1987). If Porrata received a medical diagnosis showing more serious injuries than originally thought, the State needed to have offered scans, X-rays, medical reports, or medical testimony, something, to show that diagnosis. Generally, it is not necessary to present expert testimony on the issue of causation when the relationship between cause and effect is readily apparent based on common knowledge and experience. *People v. Anderson*, 95 Ill. App. 3d 143, 148 (1981). But where the question of causation is beyond the general understanding of the public, the prosecution must present expert evidence. *Id*. Because Porrata was treated at a hospital and released with only abrasions and bruising, the cause of the injuries to which he testified–torn ligaments and loose bone fragments in his shoulder–would not be readily apparent based on common knowledge and experience. Thus, expert testimony that the incident with Steele caused Porrata's injuries was required.

¶ 32    Further, assuming Porrata was diagnosed with those injuries in the months following the incident, the State also should have provided that evidence to the defense before trial. Illinois Supreme Court Rule 415(b) (eff. Oct. 1, 1971) imposes on a party a continuing duty to disclose to the other party (and the court if trial has already commenced) any additional material or information which is subject to disclosure. Indeed, had the State obtained evidence showing Porrata was diagnosed with more severe injuries after his initial hospital visit, the State was obligated to provide that evidence to the defense before Porrata testified.

¶ 33    At trial, defense counsel objected to Porrata's testimony on hearsay grounds (and also raised the issue in his posttrial motions) but the trial judge overruled the objection. Porrata contends the trial court erred in permitting Porrata to testify about his medical diagnosis. We agree.

¶ 34    Generally, this court reviews a trial court's evidentiary rulings under an abuse of discretion standard. *People v. Caffey*, 205 Ill. 2d 52, 89 (2001). But a trial court's ruling on whether a statement is hearsay may be reviewed *de novo* when that determination does not involve fact finding or weighing the credibility of the witnesses. *People v. Aguilar*, 265 Ill. App. 3d 105, 109 (1994). In ruling on defense counsel's hearsay objection, the trial judge stated, "No, [Porrata] can talk about his own body. One of the allegations is aggravated battery with great bodily harm to a peace officer, knowing he [or she] was a peace officer. These are elements of the offense and he can talk about–anybody can talk about their own bodies." We agree that Porrata was competent to testify about his physical condition since the accident and any adverse effects from it. Ill. R. Evid. 803(3) (eff. Apr. 26, 2012) (excluding from hearsay rule "[a] statement of the declarant's then existing *** physical condition (such as *** pain, and bodily health)"). But Porrata was not competent to testify about an apparent medical diagnosis that he had torn ligaments or that those injuries were the result of this incident. *Robinson v. Wieboldt Stores, Inc.*, 104 Ill. App. 3d 1021, 1026 (1982) (plaintiff could describe her symptoms and physical limitations which she did not experience before her false imprisonment at department store, and how she felt, but because plaintiff was not qualified as expert, she was incompetent to testify regarding specific medical diagnoses).

¶ 35    Aside from the testimony by Porrata, the only evidence presented regarding Porrata's injuries–the discharge report from Northwestern Memorial Hospital and the State's photo exhibits–showed his injuries to (fortunately) be nothing more extensive than bruises and

abrasions. Because Porrata's testimony was the only evidence offered by the State and no medical evidence supported his assertions that he suffered more extensive injures, the State failed to prove beyond a reasonable doubt that Porrata suffered great bodily harm. But the State did establish under section 12-3(a) of the Code (720 ILCS 5/12-3(a) (West 2010)) that Steele, acting intentionally or knowingly without legal justification, caused bodily harm to Porrata, and thus committed battery.

¶ 36    We reduce Steele's conviction to battery as the lesser included offense of aggravated battery (*People v. Virgil*, 19 Ill. App. 3d 744, 747 (1974)) and remand for a new sentencing hearing.

¶ 37                          Effective Assistance of Counsel

¶ 38    Steele next contends he received ineffective assistance of counsel because his counsel failed to ask for discovery sanctions against the State or a continuance when Porrata testified that he had more serious injuries than indicated in the medical records tendered in discovery. Generally, to show ineffective assistance of counsel, a defendant must establish: (1) counsel's representation fell below an objective standard of reasonableness; and (2) counsel's alleged deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). We accord substantial deference to an attorney's decisions as there is a strong presumption that an attorney acted adequately. *Id.* at 689. A defendant must overcome the strong presumption the challenged action or inaction "might have been the product of sound trial strategy." *People v. Evans*, 186 Ill. 2d 83, 93 (1999). Every effort must "be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689. Because effective assistance refers to competent and not perfect representation, mistakes in trial strategy or judgment will not, of themselves, render the representation incompetent. *People v. Calhoun*, 404 Ill. App. 3d 362, 383 (2010). To satisfy the prejudice prong of the *Strickland* test, a defendant must demonstrate that, but for defense counsel's deficient performance, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694. If a reviewing court finds that the defendant did not suffer prejudice, it need not decide whether counsel's performance was constitutionally deficient. *People v. Buss*, 187 Ill. 2d 144, 213 (1999).

¶ 39    Steele argues, as did trial counsel in a posttrial motion to reconsider, that the State may have committed a discovery violation by not disclosing all of the medical records in its possession because the medical records the State produced did not indicate torn knee and shoulder ligaments. Steele's trial counsel admitted the State blindsided him.

¶ 40    Steele also asserts his trial counsel was ineffective for failing to seek sanctions against the State for a discovery violation or request a continuance to prepare for trial in light of the new evidence. Steele contends both prongs of the *Strickland* test are satisfied because (i) trial counsel's failure to seek discovery sanctions or a continuance to further investigate Porrata's surprise testimony fell below a reasonable level of representation and (ii) he was prejudiced by his counsel's failure to ask for a continuance so as to present any evidence to counter Porrata's testimony. We disagree.

¶ 41    Illinois Supreme Court Rule 412 provides that on written motion of defense counsel, the State shall disclose "any reports or statements of experts, made in connection with the particular case, including results of physical or mental examinations and of scientific tests,

experiments, or comparisons, and a statement of qualifications of the expert." Ill. S. Ct. R. 412(a)(iv) (eff. Mar. 1, 2001). Supreme Court Rule 415(b) places a continuing duty to disclose on the parties to disclose, providing that if a party discovers additional material or information subject to disclosure, he or she must promptly notify the other party or his counsel of the existence of the additional material. Ill. S. Ct. R. 415(b) (eff. Oct. 1, 1971). In his brief, Steele acknowledges "the record is silent as to whether the State knew before trial that Porrata would testify as he did or whether the State possessed additional medical reports about Porrata's injuries that it failed to disclose." In the absence of evidence that the State had medical reports that it failed to disclose, it is highly unlikely a motion for discovery sanctions would have succeeded, and thus, Steele cannot show he was prejudiced by his counsel's failure to request them.

¶ 42 Steele also contends his counsel was ineffective by failing to request a continuance to further investigate Porrata's testimony and the existence of medical records to substantiate his claims. Initially, we note that during trial defense counsel cross-examined Porrata regarding his injuries, asking whether on the day of the incident he was diagnosed with torn ligaments in his knees and shoulder or whether he had surgeries for those injuries, and Porrata responded to both inquiries that he had not. At the hearing on Steele's posttrial motion to reconsider, defense counsel suggested he may have been ineffective for failing to "bring out certain things" contained in Porrata's medical records. The trial judge responded there was "no way" trial counsel was ineffective, noting he was prepared, skillful, and articulate and presented multiple theories. In denying Steele's posttrial motion, the trial judge stated, "even if [Porrata] had not said my ligaments were torn *** I think there was enough about the differences that happened to him, the things he suffered as a result of this incident. His body felt so much differently and hasn't felt the same since. That would have been enough to show great bodily harm." These comments indicate that a continuance to gather more information would not have been likely to change the result, because the trial judge was inclined to find great bodily harm absent Porrata's testimony about torn ligaments. Thus, the trial judge's comments, counsel's success in obtaining an acquittal on the two most serious charges, and that Steele cannot show a continuance would have aided his case convince us that Steele has failed to show that the representation in the trial court was constitutionally deficient or the result would have been different had his counsel asked for a continuance.

¶ 43 In addition, Steele argues that he received ineffective assistance because trial counsel argued his own ineffectiveness in the posttrial proceedings and asks us to remand for the appointment of new counsel to represent him in a motion for a new trial. Alternatively, Steele asks that the case be remanded for "an adequate *Krankel* inquiry." A criminal defendant's sixth amendment right to effective assistance of counsel includes the right to conflict-free representation. *People v. Taylor*, 237 Ill. 2d 356, 374 (2010). The Illinois Supreme Court has identified two categories of conflicts of interest: *per se* and actual. *Id.* Steele claims counsel had a *per se* conflict in arguing his own ineffectiveness. Once a *per se* conflict is found, there is no need to show that the conflict affected the attorney's actual performance. *Id.* at 374-75. Unless a defendant waives his or her right to conflict-free representation, a *per se* conflict of interest requires reversal. *Id.* at 375.

¶ 44 The Illinois Supreme Court has set out three situations where a *per se* conflict exists: (1) where defense counsel has a prior or contemporaneous association with the victim, the prosecution, or an entity assisting the prosecution; (2) where defense counsel

contemporaneously represents a prosecution witness; and (3) where defense counsel was a former prosecutor who had been personally involved in the prosecution of defendant. *Id*. at 374. In *People v. Perkins*, 408 Ill. App. 3d 752, 761 (2011), the appellate court held that an attorney alleging his own ineffectiveness does not fall within any of these three categories recognized as *per se* conflicts of interests. In *Perkins*, as here, the defense counsel asserted his own incompetence. In finding no *per se* conflict, the court noted that the defendant was represented by different counsel on appeal, "who was unencumbered by any conflict in arguing ineffective assistance by trial counsel and did so zealously." *Id*. at 762.

¶ 45    Steele contends the *Perkins* rationale does not apply–although he is presented by new, conflict-free counsel in this appeal, it appears from defense counsel's statements at the posttrial hearing that he had X-rays and range of motion studies performed on Porrata that could have been used for impeachment purposes and his appellate counsel does not have access to those documents. But, as noted, the trial judge stated that he would have found great bodily injury even if Porrata had not testified regarding torn ligaments based on the effect the incident had on his overall physical health (albeit during the sentencing phrase). Thus, Steele's trial counsel was not ineffective.

¶ 46    Defendant alternatively asks us to remand because the trial court erred in failing to conduct a *sua sponte Krankel* inquiry into whether defense counsel provided ineffective assistance after defense counsel suggested in the posttrial motion that he may have been ineffective for not properly using the medical records to impeach Porrata's credibility about his injuries.

¶ 47    The supreme court's decision in *Krankel* has led to the rule that when a defendant raises a *pro se* posttrial claim of ineffective assistance of counsel, the trial court should examine the factual basis of the claim. *People v. Moore*, 207 Ill. 2d 68, 77-78 (2003). In the absence of a sufficient claim of ineffective assistance of counsel by the defendant, that inquiry is required. *People v. Taylor*, 237 Ill. 2d 68, 77 (2010). Steele did not make a *pro se* complaint; however, he maintains that even where a defendant has not raised a claim of ineffectiveness, a trial court has a duty to act *sua sponte* when the record provides a clear basis for an allegation of ineffectiveness. In making that argument, Steele relies on *People v. Williams*, 224 Ill. App. 3d 517, 524 (1992).

¶ 48    In *Williams*, the defendant was found guilty of murder, and defense counsel filed a motion for a new trial, informing the court of two witnesses who would have supported defendant's alibi defense that had not been called at trial in spite of his knowledge of their existence. *Id*. at 521-23. The trial court denied the motion. In doing so, the trial court rejected defense counsel's claim that these witnesses constituted new evidence, referring to counsel's argument as " 'ridiculous.' " *Id*. at 522. Before the appellate court, defendant argued that the trial court erred in failing to conduct a *sua sponte Krankel* inquiry into defense counsel's ineffectiveness, which was readily apparent from counsel's statements regarding the alibi witnesses he did not call at trial. *Id*. at 523. The appellate court noted that the two witnesses would have provided critical support of defendant's alibi defense and that the trial court's strong comments to counsel indicated that it was made aware of counsel's possible neglect. *Id*. at 524. The court thus held that where the record discloses a clear basis for an allegation of ineffectiveness of counsel, a defendant's failure in explicitly making that allegation does not result in waiver, and it remanded the case to the trial court for a preliminary investigation into defense counsel's performance. *Id*.

¶ 49     Unlike in *Williams*, defense counsel's statements did not concern Steele's guilt or innocence of the charged offense, and the court was not presented with evidence of defense counsel neglecting to present witnesses or put on a defense. *People v. Henney*, 334 Ill. App. 3d 175, 190 (2002). Further, unlike in *Williams*, even if defense counsel had questioned Porrata about his injuries and the medical reports, it is unlikely the outcome would have been different, as the trial judge stated that he was convinced Porrata suffered great bodily injury even without the evidence of torn ligaments. Under these circumstances, we find no error by the trial court in failing to conduct a *sua sponte Krankel* inquiry.

¶ 50                   Aggravated Fleeing and Eluding a Peace Officer

¶ 51     In addition to the aggravated battery charge, the State also charged Steele under section 11-204.1 of the Illinois Vehicle Code (625 ILCS 5/11-204.1 (West 2010)) with three counts of aggravated fleeing or attempting to elude a peace officer. Specifically, the State alleged that in fleeing or attempting to elude a peace officer, Steele was travelling at a rate of speed at least 21 miles per hour over the legal speed limit (625 ILCS 5/11-204.1(a)(1) (West 2010)) (count IV), caused bodily injury to an individual (625 ILCS 5/11-204.1(a)(2) (West 2010)) (count V), and disobeyed two or more official traffic control devices (625 ILCS 5/11-204.1(a)(4) (West 2010)) (count VI). The trial court convicted on all three counts and sentenced Steele to three years on each count. Although the court merged the three counts, the mittimus reflects three convictions. Steele contends the State failed to prove him guilty beyond a reasonable doubt as to counts IV and VI and that the mittimus must be corrected to reflect the merger of the three counts. Because we agree that the State failed to prove guilt beyond a reasonable doubt as to counts IV and VI, we need not address the merger contention.

¶ 52     It is fundamental that the due process clause protects the accused against conviction unless the prosecution proves beyond a reasonable doubt every fact necessary to encompass the crime charged. *People v. Carpenter*, 228 Ill. 2d 250, 264 (2008). When a defendant challenges the sufficiency of the evidence to support a conviction, the relevant question on review is whether, after considering the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *People v. Beauchamp*, 241 Ill. 2d 1, 8 (2011). The trier of fact determines the credibility of witnesses, the weight to be given to their testimony, and the reasonable inferences to be drawn from the evidence, and this court will not substitute its judgment for that of the trial court on these matters. *People v. Collins*, 214 Ill. 2d 206, 217 (2005). If, after a careful examination of the evidence, we "are of the opinion that the evidence is insufficient to establish the defendant's guilt beyond a reasonable doubt, we must reverse the conviction." (Internal quotation marks omitted.) *People v. Hernandez*, 312 Ill. App. 3d 1032, 1036 (2000). Although the determinations of the trier of fact are given great deference, they are not conclusive. *People v. Ortiz*, 196 Ill. 2d 236, 259 (2001). We will set aside a criminal conviction if "the evidence is so unreasonable, improbable, or unsatisfactory as to justify a reasonable doubt of defendant's guilt." *Id.*

¶ 53     Steele concedes the evidence at trial proved that in fleeing the scene he caused bodily injury to Porrata and thus does not contest his conviction as to count V. But he contends the State presented no evidence that he was traveling at least 21 miles per hour over the speed limit or that he disobeyed two or more traffic signals. We agree. Officer Rigan, who pursued Steele from the scene of the traffic safety check until he found the car abandoned on the south side,

testified he did not know and could not estimate how fast Steele traveled down the Kennedy Expressway. Although Steele most likely was speeding, no testimony and no evidence at trial indicates he drove at more than 21 miles per hour over the speed limit. Similarly, there was no mention of traffic signals at trial and no testimony or evidence that Steele disobeyed at least two of them. One can presume that a person fleeing the police may travel at a high rate of speed and disobey multiple traffic signals. But, a trier of fact must determine a defendant's guilt on the evidence presented at the trial and not presume evidence when there is none. Due to the absence of evidence on these two issues, the State failed to prove beyond a reasonable doubt that Steele was guilty as to counts IV and VI. Thus, we reverse those counts and affirm his conviction as to count V. Because we are vacating two of the three aggravated fleeing and eluding counts, we need not address Steele's request that the mittimus be corrected due to the one-act, one-crime violation.

¶ 54                                              CONCLUSION

¶ 55        In the absence of evidence to support Porrata's testimony that he suffered torn knee and shoulder ligaments, the State failed to present sufficient evidence of "great bodily harm" to support a conviction under section 12-4(a) of the Code. 720 ILCS 5/12-4(a) (West 2010). Thus, we reduce Steele's conviction to battery under section 12-3(a) of the Code (720 ILCS 5/12-3(a) (West 2010)) and remand for resentencing on that count. We also vacate two of the aggravated fleeing and eluding counts and affirm the conviction and sentence on the third aggravated fleeing and eluding count.

¶ 56        Affirmed in part, vacated in part and modified in part; cause remanded for a new sentencing hearing.