2021 IL App (1st) 200050-U

No. 1-20-0050

Order filed October 14, 2021

Fourth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 17 CR 1571 |
| | ) | |
| FRITZ DUROSIER, | ) | Honorable |
| | ) | James M. Obbish, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE ROCHFORD delivered the judgment of the court.
Presiding Justice Reyes and Justice Martin concurred in the judgment.

**ORDER**

¶ 1   *Held*:   We affirm defendant's conviction for aggravated battery where the evidence was sufficient to prove beyond a reasonable doubt that he knowingly caused permanent disability to a police officer during the course of the officer's official duties.

¶ 2   Following a bench trial, defendant Fritz Durosier was found guilty of aggravated battery predicated on causing permanent disability to a police officer during the course of the officer's official duties (720 ILCS 5/12-3.05(a)(3) (West 2016)) and sentenced to six years' imprisonment.

On appeal, defendant contends the State relied on hearsay to prove the officer sustained a permanent disability and failed to establish defendant acted with the requisite intent. We affirm.

¶ 3     Defendant was charged by information with six counts of aggravated battery (counts I-VI) and one count of resisting a peace officer (count VII) for allegedly striking and biting Chicago police officer Russell Bacius on January 12, 2017. Counts I-III for aggravated battery alleged, respectively, that defendant knowingly caused great bodily harm to Bacius while he performed his official duties, to prevent him from performing his official duties, or in retaliation therefor. Counts IV-VI for aggravated battery alleged, respectively, that defendant knowingly caused permanent disability to Bacius while he performed his official duties, to prevent him from performing his official duties, or in retaliation for the same.

¶ 4     At trial, Bacius testified that on January 12, 2017, at approximately 7:30 a.m., he was working in plain clothes at O'Hare Airport (O'Hare). Bacius saw defendant, whom he identified in court, sleeping across several seats in Terminal 5. Bacius had seen defendant numerous times and warned him about trespassing. Bacius woke defendant and announced his office. Defendant stated he was there to sleep, and Bacius arrested him. Bacius asked defendant to stand, turn around, and place his hands behind his back. Defendant complied, and Bacius handcuffed him.

¶ 5     Bacius escorted defendant to a transport vehicle in front of the terminal. Officer Jennifer Jacobucci, the driver, opened the rear passenger door. Defendant pulled away from Bacius "as if he did not want to go into the [vehicle]." Bacius placed his hands on defendant's shoulders and "tried to get him" to comply.

¶ 6     As Bacius pushed defendant into the vehicle, defendant braced his left foot inside the vehicle and pushed backwards, causing defendant to fall onto the seat with his feet near the open

door. Defendant then kicked Bacius's right hand and hit Bacius's right pinky finger "from the second knuckle down." Defendant sat up, spat in Bacius's face, and attempted to exit the vehicle. Bacius again placed his hands on defendant's shoulders and pushed him back into the vehicle. As Bacius pushed defendant, defendant fell onto the seat and Bacius landed on him. Defendant then bit Bacius's right index finger "extremely hard," with the finger "almost up to the second joint" in defendant's mouth, causing puncture wounds and bleeding. Bacius yelled, "he bit me," and pulled his hand from defendant's mouth. Defendant yelled, "I love it, I love it."

¶ 7     Bacius showed his partner and sergeant his injury, and they called for an ambulance. At the hospital, medical personnel irrigated Bacius's wounds, took x-rays of both fingers, and splinted his pinky finger. Bacius had follow-up treatment with a finger specialist and communicable disease doctors. For Bacius's pinky finger, doctors prescribed a splint for three months and occupational therapy because "they said" surgery would not fix the injury. Bacius identified photographs of his hand taken at the hospital, which are included in the record and show his hand with two puncture wounds on the index finger, and a bent pinky finger.

¶ 8     Bacius explained that the kick caused permanent loss of full functionality to his pinky finger. Specifically, according to Bacius, "[t]he tendon detached in that part of the finger and is not able to be fully reattached and will permanently be what they consider to drooping at a lower level." Bacius then demonstrated the functionality of both his pinky fingers. The court commented that Bacius's right pinky "does not extend out perfectly straight as it does on his left hand." Bacius added that the bite to his right index finger caused two puncture wounds and a large laceration with "some missing flesh" and an "extreme amount" of bleeding. He had a scar on his index finger, which he showed to the court.

¶ 9     On cross-examination, Bacius stated he was not wearing a camera during the incident. When Bacius woke defendant, Bacius announced his office and showed his star. Defendant said, "yeah, I know who you are." Defendant was compliant from the time Bacius handcuffed him to their arrival at the vehicle. As defendant lay on the back seat, he raised his knee "up to his chest" and thrust his leg to kick Bacius. When defendant spat at Bacius, it hit "the whole front" of his face as a "mist." After defendant kicked and bit Bacius's hand, Bacius continued performing his duties in completing the arrest.

¶ 10    At the hospital, Bacius received treatment for two to three hours. The injury to his pinky was "a torn ligament from the second joint down," and at the time of trial, was "still *** in a state where it's not fully been able to repair." According to Bacius, the finger will "droop" for the rest of his life and never straighten completely. The finger was not fully mobile, and he could not touch his pinky to his thumb. Bacius had no medical training and agreed that he could not "make medical diagnoses."

¶ 11    Jacobucci testified that she received a call to transport a suspect at O'Hare on January 12, 2017, at approximately 7:30 a.m. She traveled to lower Terminal 5, met with Bacius, his partner, and their sergeant, and saw defendant, whom she identified in court, in custody. She opened the rear passenger door for the officers to place defendant in the vehicle, and walked to the driver seat. Jacobucci then heard yelling and saw defendant leaning over and kicking toward Bacius. Jacobucci's view was obstructed by the cage and barrier between the rows of seats, but she saw defendant kicking because the door was still open. She did not see whether defendant struck the officers. Bacius screamed that defendant bit him and defendant yelled, "I love it, I love it."

Jacobucci exited the vehicle, looked in the backseat, and saw a red stain, "suspect blood," that had not been there previously. She did not see Bacius's injuries.

¶ 12 On cross-examination, in response to being asked whether she saw defendant kick at any specific officer, Jacobucci stated Bacius "probably had the most contact" with defendant, but she did not recall where Bacius's partner and sergeant were in relation to defendant.

¶ 13 Defendant testified that on January 12, 2017, around 7 a.m., he was at O'Hare "trying to meet people and make some deals." At approximately 7:30 a.m., he was sitting in Terminal 1 and dozed off. He was woken by an officer kicking his foot and applying pressure to his chest. Defendant saw two officers, wearing stars on their belts but not uniforms, and they did not introduce themselves to him. Defendant stated that he planned to leave on the Blue Line, and apologized for falling asleep. One officer handcuffed defendant while he still sat. The officer told defendant that they had told him not to be at O'Hare "several times," and they would arrest him because he had no business there.

¶ 14 The officer then grabbed defendant's right arm and "dragged" him to a vehicle before calling for another vehicle which arrived seven minutes later. With another man, the officer "vertically" threw defendant into the backseat. Defendant's head hit the left side of the interior of the vehicle, and he did not recall anything after that.

¶ 15 In closing, trial counsel argued in relevant part that the State failed to prove that Bacius sustained a permanent disability because it presented no evidence of aftercare, occupational therapy, or a prognosis following care. No evidence aside from Bacius's testimony described the extent of the injury to his pinky finger, Bacius had no medical training, and the State did not present a witness qualified to testify whether Bacius sustained great bodily harm or permanent disability.

¶ 16    The court found defendant guilty of aggravated battery predicated on knowingly caused permanent disability to Bacius while he performed his official duties (count IV), to prevent him from performing his official duties (count V), and in retaliation therefor (count VI), and resisting a peace officer (count VII), and not guilty of counts I-III for aggravated battery which charged that he knowingly caused Bacius great bodily harm. The court found the officers to be "very credible," but defendant was not credible where he placed himself at a different terminal and stated he was at O'Hare "to make contact with unknown individuals." The court found the injury to Bacius's finger did not qualify as great bodily harm but did qualify as a permanent disability because the officer could no longer squeeze his hand properly or straighten the finger.

¶ 17    Defendant filed a motion for a new trial, arguing in relevant part that the State failed to prove that his actions caused permanent disability to Bacius because Bacius was not medically trained to credibly testify that his tendon permanently detached. Further, the State did not present any medical professionals or records regarding Bacius's initial treatment or follow-up care. The court denied the motion, noting that Bacius testified regarding an injury sustained three years before trial, described his treatment, stated the tendon could not be reattached, and demonstrated that he could not straighten the finger. The court found the injury was "obvious and visible" in a visual comparison of Bacius's hands.

¶ 18    The court merged the counts into count IV for aggravated battery. Following a hearing, the court sentenced defendant to six years' imprisonment and denied his motion to reconsider sentence.

¶ 19    On appeal, defendant argues the State failed to prove beyond a reasonable doubt that he committed aggravated battery where it improperly relied on Bacius's hearsay medical testimony

to establish that Bacius sustained a permanent disability. Defendant also argues the State failed to prove beyond a reasonable doubt that he knew his actions would cause permanent disability to Bacius.

¶ 20    As an initial matter, the State argues that defendant forfeited any argument that the trial court erred in admitting hearsay testimony because he did not raise it at the trial level, and in his opening brief, merely argued that the State failed to prove Bacius suffered permanent disability because it relied on the hearsay. In his reply brief, defendant asserts that hearsay may not be used to prove an element of an offense, and so his argument challenges the sufficiency of the evidence.

¶ 21    Defendant did not object to the testimony as hearsay, so he has forfeited his argument to the extent it implicates admissibility. *Krengiel v. Lissner Corp., Inc.*, 250 Ill. App. 3d 288, 295 (1993) ("[o]bjection to the introduction" of evidence as hearsay "must be made at the time of admission, or it will be treated as waived"). However, his claim that the State failed to prove him guilty beyond a reasonable doubt does not require a contemporaneous objection or posttrial motion for preservation. See *People v. Enoch*, 122 Ill. 2d 176, 190 (1988).

¶ 22    The standard of review for a challenge to the sufficiency of the evidence is "whether, viewing the evidence in the light most favorable to the State, 'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " *People v. Belknap*, 2014 IL 117094, ¶ 67 (quoting *People v. Collins*, 106 Ill. 2d 237, 261 (1985)). This standard applies whether the evidence is direct or circumstantial. *People v. Wheeler*, 226 Ill. 2d 92, 114 (2007) (citing *People v. Cooper*, 194 Ill. 2d 419, 431 (2000)). The trier of fact is responsible for resolving conflicts in the testimony, weighing the evidence, and drawing reasonable inferences from basic facts to ultimate facts. *People v. Brown*, 2013 IL 114196, ¶ 48. The reviewing court must allow all

reasonable inferences from the record in favor of the prosecution (*People v. Cunningham*, 212 Ill. 2d 274, 280 (2004)) and will not reverse a criminal conviction unless the evidence is "unreasonable, improbable, or so unsatisfactory as to justify a reasonable doubt of the defendant's guilt" (*People v. Jackson*, 232 Ill. 2d 246, 281 (2009)).

¶ 23    To sustain defendant's conviction for aggravated battery of a peace officer, the State had to prove beyond a reasonable doubt that in committing battery, he knowingly caused permanent disability or disfigurement to Bacius, whom he knew to be a peace officer performing his official duties. 720 ILCS 5/12-3.05(a)(3) (West 2016). Defendant only challenges whether the State proved he knowingly caused a permanent disability.

¶ 24    "[F]or an injury to be deemed disabling, all that must be shown is that the victim is no longer whole such that the injured bodily portion or part no longer serves the body in the same manner as it did before the injury." *People v. Conley*, 187 Ill. App. 3d 234, 240 (1989). A person acts knowingly when he is "consciously aware" of the nature or attendant circumstances of his conduct or that a result is practically certain to be caused by his conduct. 720 ILCS 4-5 (West 2016).

¶ 25    Here, the State presented evidence that as Bacius placed defendant into the police vehicle, defendant kicked Bacius's hand, detaching a tendon or ligament and resulting in Bacius's inability to manipulate his injured hand the same way as his uninjured hand. The State also presented evidence defendant bit Bacius's hand strong enough to draw blood, and said "I love it, I love it." Bacius testified that defendant's kick injured his hand after which he could no longer bend his pinky finger, and demonstrated to the court the difference between his hands. He also testified that the injury had not improved during the three years following the incident.

¶ 26     Viewing the evidence in a light most favorable to the State, a rational trier of fact could find the State proved that Bacius suffered permanent injury from defendant's actions. A lay witness is competent to testify about his physical condition and any adverse effects related to it. *People v. Steele*, 2014 IL App (1st) 121452, ¶ 34 (citing Ill. R. Evid. 803(3) (eff. Sept. 28, 2018)). Accordingly, Bacius was competent to testify about the functionality of his hand after defendant kicked it. Additionally, the State presented photographs of Bacius's hand after the incident, showing a bent pinky finger, and Bacius demonstrated the functional difference in his hands to the court. "In a bench trial, it is the responsibility of the trial court to judge the credibility of the witnesses." *People v. Connolly*, 322 Ill. App. 3d 905, 919 (2001). The court found Bacius to be a "very" credible witness, and the testimony of a single witness, if positive and credible, is sufficient to convict. *People v. Siguenza-Brito*, 235 Ill. 2d 213, 228 (2009). Thus, even absent Bacius's testimony regarding what medical personnel told him, the State presented sufficient evidence that his hand no longer functions as before the accident. See *Conley*, 187 Ill. App. 3d at 240.

¶ 27     Defendant nevertheless cites *Steele* to argue the State relied upon improper hearsay testimony to establish Bacius's permanent disability. In *Steele*, the victim testified that he suffered torn ligaments and bone fragments in his shoulder, but hospital records and photographs of his injuries showed only that he had been treated for abrasions and bruises. *Steele*, 2014 IL App (1st) 121452, ¶¶ 29-30. The trial court convicted the defendant of aggravated battery. *Id.* ¶ 3. We reduced the defendant's conviction to battery, ruling that the victim's testimony was insufficient to establish great bodily harm because he was not competent to testify regarding the medical diagnosis where the cause of the injuries would not be "readily apparent based on common knowledge and experience." *Id.* ¶¶ 31-36.

¶ 28     Here, the evidence, including the photographs and demonstration to the court, was consistent with a serious injury to Bacius's hand. As such, the court was capable of finding that Bacius had been permanently disabled without relying upon medical evidence beyond Bacius's experience or knowledge. Therefore, the court's determination that Bacius was permanently disabled was not so "unreasonable, improbable, or so unsatisfactory as to justify a reasonable doubt of the defendant's guilt." *Jackson*, 232 Ill. 2d at 281.

¶ 29     Additionally, defendant argues the State failed to prove that he knowingly caused permanent disability to Bacius because neither Bacius's nor Jacobucci's testimony established that defendant deliberately kicked Bacius or was consciously aware of the practical certainty that kicking Bacius would permanently disable him.

¶ 30     A person acts knowingly where he is consciously aware his conduct is practically certain to cause permanent disability. See *Steele*, 2014 IL App (1st) 121452, ¶ 23. It is not necessary that the State prove the defendant intended the specific consequence that occurred. See, *e.g.*, *People v. Isunza*, 396 Ill. App. 3d 127, 132-33 (2009) (in a case involving aggravated battery predicated on great bodily harm, "[e]ven if the defendant did not intend for glass to fly into one of [victim's] eyes," the injury "was a natural and probable consequence of the defendant's actions" in smashing the window of the vehicle in which victim sat). "Regardless of whether one calls battery a specific intent crime or a general intent crime *** the criminality of a defendant's conduct depends on whether he acted knowingly or intentionally, or whether his conduct was accidental." *People v. Phillips*, 392 Ill. App. 3d 243, 258 (2009).

¶ 31     Where the defendant denies intent or knowledge, the State may prove the defendant's mental state through circumstantial evidence. *Id*. at 259. A defendant's intent or knowledge "can

be inferred from the surrounding circumstances, the offender's words, the weapon used, and the force of the blow." *Conley*, 187 Ill. App. 3d at 242. A person is assumed to intend the natural and probable consequences of his actions. *Id*. Whether the defendant had the requisite *mens rea* for the offense is a question for the trier of fact and will not be disturbed on review absent reasonable doubt as to the defendant's guilt. *People v. Maggette*, 195 Ill. 2d 336, 354 (2001).

¶ 32    Here, the evidence was sufficient to establish that defendant was consciously aware that his conduct was practically certain to cause permanent disability to Bacius. While defendant testified that he did not remember any events after he hit his head in the police vehicle, the court found him to be not credible, citing inconsistencies in his testimony. We will not substitute our judgment for that of the trial court regarding its assessment of the credibility of witnesses. See *Brown*, 2013 IL 114196, ¶ 48.

¶ 33    Although it is possible that defendant kicked "wildly" or was unaware of the consequences of his actions, "this court is not required to search out all possible explanations consistent with innocence." See *People v. Wheeler*, 226 Ill. 2d 92, 117 (2007). Bacius credibly testified that not only did defendant thrust his leg "at" Bacius's hand, but defendant also spat in Bacius's face, bit the hand hard enough to draw an "extreme amount of blood," and stated "I love it, I love it" after Bacius cried out. Jacobucci's testimony was consistent with Bacius's regarding the incident, although she did not see whether defendant kicked at a particular officer. These circumstances, taken together in the light most favorable to the State, support the conclusion that defendant knew his actions would seriously injure Bacius's hand. See *Conley*, 187 Ill. App. 3d at 242. Even if defendant did not intend to cause Bacius's disability, the natural and probable consequences of causing serious injury to a hand is its permanent disability. Accordingly, we will not disturb the

trial court's determination that defendant acted with the requisite *mens rea*. See *Maggette*, 195 Ill. 2d at 354.

¶ 34    For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

¶ 35    Affirmed.