2020 IL App (1st) 181511-U

No. 1-18-1511

Order filed November 6, 2020

Fifth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 15 C6 60922 |
| | ) | |
| AARON BROWN, | ) | Honorable |
| | ) | Michele M. Pitman, |
| Defendant-Appellant. | ) | Judge, presiding. |

PRESIDING JUSTICE DELORT delivered the judgment of the court.
Justice Hoffman and Justice Rochford concurred in the judgment.

**ORDER**

¶ 1    *Held:*  We affirm defendant's conviction for aggravated fleeing or attempting to elude a peace officer over his contention that the State failed to prove beyond a reasonable doubt that he willfully ignored a uniformed peace officer's visual and audible signal to stop.

¶ 2    Following a jury trial, defendant Aaron Brown was found guilty of two counts of possession of a controlled substance (720 ILCS 570/402(c) (West 2014)) and one count of aggravated fleeing or attempting to elude a peace officer (625 ILCS 5/11-204.1(a)(4) (West 2014)). He was sentenced to two concurrent 30-month probation terms. On appeal, defendant contends

that he was not proven guilty beyond a reasonable doubt of aggravated fleeing or attempting to elude a peace officer because the evidence at trial failed to establish that the officers pursuing him were in uniform as required by the Illinois Vehicle Code (Code) (625 ILCS 5/1-100 *et seq.* (West 2014)). We affirm.

¶ 3    Following his September 27, 2015, arrest, defendant was charged with two counts of possession of a controlled substance and one count of aggravated fleeing or attempting to elude a peace officer. The aggravated fleeing or attempting to elude a peace officer count alleged that defendant, as the driver of a motor vehicle having been given a visual or audible signal by a police officer directing him to stop his vehicle, willfully failed or refused to obey such a direction, increased his speed, extinguished his lights, or otherwise fled or attempted to elude the officer and in the process disobeyed two or more official traffic control devices.

¶ 4    Defendant filed a motion to quash arrest and suppress evidence, which the circuit court denied following a hearing. The matter proceeded to a jury trial.

¶ 5    At trial, Calumet City police investigator William Klomes testified that on September 27, 2015, he and his partner, Investigator Guerrero, were on patrol in an unmarked Ford Explorer with tinted windows, "operational lights," and sirens.[1] Klomes was wearing a "plain clothes uniform with an outer-vest carrier [with] police markings." A police badge and nametag were attached to the front of the carrier. He was also wearing a "full-duty belt" with a firearm, extra magazines, and handcuffs.

¶ 6    Around 6:35 p.m., the officers were at Douglas Avenue and Sibley Boulevard in Calumet City. The intersection is a four-way stop. The officers were behind a black Lexus, which turned right without signaling. The officers activated the emergency lights and attempted to make a traffic

_____

[1] Guerrero's first name is not included in the report of proceedings.

stop. The Explorer had red and blue flashing lights on the front and rear windshields, and the headlights and taillights were strobes that flashed when the lights were activated. When the Lexus did not stop, Klomes activated the sirens. He also activated the air horn intermittently.

¶ 7    At the intersection of Douglas and State Road, the Lexus turned right without stopping at the stop sign. The Lexus continued to the intersection of State and State Line Road, where it made another right hand turn without stopping at the red light. The officers continued to pursue the Lexus with the lights and sirens activated. Ultimately, they partially blocked the Lexus, and Klomes approached the driver's side with his weapon drawn. He opened the door and asked the driver to exit. Klomes identified defendant in court as the driver. Klomes did not hear any loud music or "automobile noises" coming from the Lexus.

¶ 8    After defendant exited the Lexus, officers walked him to the back of the vehicle. Although defendant pulled his arms away, he was ultimately placed in handcuffs. Investigator Jose Rivas, who arrived at the scene, attempted a protective pat down of defendant. However, defendant tried to "shrug loose," kicked backward, and struck Rivas in the leg. Later, at the police station, narcotics were recovered from defendant.

¶ 9    During cross-examination, Klomes testified that he wore plain clothes with an outer-vest carrier that bore police markings. He did not recall receiving a call about a suspicious vehicle shortly before the Lexus was curbed. Defendant was pulled over because Klomes observed a traffic violation. The Lexus had tinted windows.

¶ 10    Rivas testified he arrived at the scene wearing his department-issued vest, badge, and duty belt with firearm, radio, and equipment. He assisted in the struggle between defendant, Klomes and Guerrero. Rivas then attempted to pat down defendant, who twisted the top of his body, kicked his feet backward, and struck Rivas in the left leg. The officers gained control of defendant by

pressing him against his vehicle. Rivas then performed a quick pat down. Later, during a more thorough search at a police station, Rivas recovered a sandwich bag from defendant's back left pants pocket. This bag held two knotted plastic bags containing a brown rock-like substance and three knotted plastic bags containing an off-white rock-like substance. After these items were recovered, defendant began sweating "very profusely," vomited, and was taken to a hospital.

¶ 11 The State presented evidence establishing that the brown rock-like substance recovered from defendant weighed 1.2 grams and contained heroin. The State entered a stipulation that contents of other bags weighed 0.5 grams and contained cocaine.

¶ 12 Defendant, who acknowledged a prior conviction for the manufacture and delivery of cannabis, testified that he stopped and signaled at the intersection of Sibley and Douglas before turning right. He pulled over "immediately" when he saw lights. However, when he saw a "16-year old car," he concluded it was not a police vehicle. Defendant was scared because he was in a residential area and no one was outside, so he drove toward an area with better lighting and more people. He stopped at a stop sign, signaled, and turned onto State Line. He next stopped at a red light, signaled, and turned. When he tried to turn left, the same vehicle came from behind and "blocked" him. Officers with firearms then jumped out, told him to exit the vehicle, and opened the door. Defendant was pulled from the vehicle and searched. Items were pulled from defendant's pockets and placed on the back of his vehicle, and he was pressed against the vehicle in a way that he could not breathe. He denied having heroin or cocaine and was "surprised" when Rivas said he had narcotics. He sweated and asked for water because he was in pain after officers pushed on his chest.

¶ 13 During cross-examination, defendant denied knowing that police officers were behind him. When he saw police lights on an unmarked vehicle, he stopped immediately but when no one

exited the vehicle, he though the officers were responding to a nearby house or perhaps it was not a police vehicle. He was also scared so he pulled away. As defendant proceeded, the vehicle followed him with lights activated. He did not hear a siren or an air horn. After his vehicle was "blocked in," people exited the other vehicle, but they did not identify themselves as police officers. Defendant did not see anyone wearing duty belts or a vest with "police writing" or other identifying marks; rather, he saw "regular clothes." Although defendant saw a badge, he could not read it. Someone put a firearm with a chambered bullet near defendant's face. Defendant was unsure whether these people were police officers, and they did not say he was under arrest at the scene or handcuff him at the rear of his vehicle. He was not cuffed until he was next to Rivas's vehicle. He denied struggling; rather, he turned around and asked why officers were searching his underwear when he was already searched. During redirect, defendant testified that he was searched at the scene and nothing was recovered.

¶ 14     Following closing argument, the jury found defendant guilty of all counts. Defendant filed a motion for a new trial or judgment notwithstanding the verdict, alleging, in pertinent part, that the State failed to establish that Klomes and Guerrero were in uniform during the traffic stop. After hearing argument, the court denied the motion. The court noted that the jury heard Klomes testify he was in plain clothes and wore a police vest with markings, a badge, and a full duty belt. The court distinguished the facts of this case from *People v. Williams*, 2015 IL App (1st) 133582, where an officer was in civilian dress without any indication he was a police officer.

¶ 15     The court then merged the possession of a controlled substance counts, and sentenced defendant to 30 months of probation. The court also sentenced defendant to concurrent 30-month term of probation for aggravated fleeing or attempting to elude a police officer.

¶ 16   On appeal, defendant contends that he was not proven guilty of aggravated fleeing or attempting to elude a peace officer beyond a reasonable doubt when the evidence at trial was insufficient to establish that the officers were in uniform at the time of the offense as required by the statute.

¶ 17   When a challenge is made to the sufficiency of the evidence at trial, a reviewing court must determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *People v. Baskerville*, 2012 IL 111056, ¶ 31. In making this determination, we review the evidence in the light most favorable to the State. *Id.* A trier of fact is not required to disregard inferences which flow normally from the evidence before it or seek out any "possible explanations consistent with innocence and raise them to a level of reasonable doubt." *People v. Campbell*, 146 Ill. 2d 363, 380 (1992).

¶ 18   As charged here, a defendant commits fleeing or attempting to elude if he willfully fails or refuses to stop his motor vehicle when a peace officer gives a visual or audible signal to do so. 625 ILCS 5/11-204(a) (West 2014). The signal may involve, among other things, a siren or oscillating, rotating, or flashing red or blue lights which, when used in conjunction with an audible horn or siren, indicates that the officer's vehicle is an official police vehicle. *Id*. The peace officer giving such signal must be in "police uniform." *Id.* The offense is aggravated if, among other things, the defendant disobeyed two or more official traffic control devices. 625 ILCS 5/11-204.1(a)(4) (West 2014).

¶ 19   In the case at bar, defendant contends that the officers were not in uniform at the time of the offense as required by section 11-204(a) of the Code. We disagree.

¶ 20   The statutory requirement that an officer be in uniform has been strictly construed. See *People v. Maxey*, 2018 IL App (1st) 130698-B, ¶¶ 120-21 (reversing the defendant's conviction

for aggravated fleeing or attempting to elude a peace officer when the evidence did not show what the officers were wearing at the time of the stop); *People v. Williams*, 2015 IL App (1st) 133582, ¶¶ 14, 16 (reversing conviction for aggravated fleeing or attempting to elude a peace officer because the statute requires the pursuing officer be in police uniform, yet the officer testified that he wore " ' civilian dress' "); *People v. Murdock*, 321 Ill. App. 3d 175, 175-76 (2001) (reversing conviction for aggravated fleeing or attempting to elude a peace officer where no evidence was presented concerning the officer's clothing and rejecting the argument that the defendant should have known he was being pursued by a police officer because lights and sirens were activated).

¶ 21    However, this court has also concluded that "a vest with police markings can, under certain circumstances, constitute a police uniform under the statute." *People v. Cavitt*, 2019 IL App (2d) 170149, ¶ 181 (rejecting the defendant's argument that only a "traditional police uniform" satisfied that statute in "all circumstances"). As we explained in *Cavitt*, "[t]he statute includes this requirement because it ensures that the defendant is fleeing or eluding an actual police officer." *Id.* Therefore, a tactical vest with police markings, or other indications of police authority, such as an exposed badge or a sidearm, satisfies section 11-204(a) of the Code. *Id.* ¶ 182.

¶ 22    Here, Officer Klomes testified that he wore a "plain clothes uniform," which included an "outer-vest carrier" with police markings, and that a badge and nametag were attached to the front of the carrier. Klomes also wore a "full-duty belt" with a firearm, extra magazines, and handcuffs. He testified that his partner was dressed similarly. Moreover, Rivas testified that he wore his department-issued vest, badge, and duty belt with firearm, radio, and equipment. This testimony established that the three officers were in uniform within the meaning of section 11-204(a) of the Code. *Id.* ¶ 181.

¶ 23    Although defendant is correct that the officers were not in traditional police uniforms, as explained above, a traditional uniform is not always required. *Id.* ¶¶ 181-182. Here, the officers' testimony established that they wore vests with police markings, badges, and nametags, as well as duty belts with firearms and other department-issued equipment. Thus, the evidence at trial was such that a rational trier of fact could reasonably find that the officers, wearing vests with police markings and badges, were peace officers in uniform within the meaning of section 11-204(a) of the Code. We reverse a conviction only when the evidence was "so unreasonable, improbable, or unsatisfactory as to justify a reasonable doubt of the defendant's guilt." *People v. Brown*, 2013 IL 114196, ¶ 48. This is not one of those cases.

¶ 24    Accordingly, we affirm defendant's conviction for aggravated fleeing or attempting to elude a peace officer.

¶ 25    Affirmed.