2023 IL App (1st) 220231

SIXTH DIVISION
Filing Date June 2, 2023

No. 1-22-0231

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | |
| | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| | ) | Cook County. |
| v. | ) | |
| | ) | No. 20 CR 02786 |
| ISREAEL DAVIS, | ) | |
| | ) | The Honorable |
| Defendant-Appellant. | ) | Adrienne Davis, |
| | ) | Judge, Presiding. |

_____

JUSTICE ODEN JOHNSON delivered the judgment of the court, with opinion.
Justices C.A. Walker and Tailor concurred in the judgment and opinion.

**OPINION**

¶ 1    Following a bench trial, defendant Isreael Davis was convicted of aggravated possession of a stolen motor vehicle (aggravated PSMV) (625 ILCS 5/4-103.2(a)(7)(A) (West 2018)), simple possession of a stolen motor vehicle (PSMV) (*id.* § 4-103(a)(1)), and two counts of aggravated fleeing or attempting to elude a peace officer (*id.* § 11-204.1(a)(1), (4)). He was sentenced to concurrent prison terms of four years for aggravated PSMV, three years for PSMV, three years for aggravated fleeing or attempting to elude a peace officer, and two years

for fleeing and eluding. On appeal, defendant contends that (1) his trial counsel was ineffective for failing to challenge a police officer's identification testimony and failing to move for discovery sanctions or seek a continuance to rebut the testimony, (2) he was not proven guilty beyond a reasonable doubt where his conviction rested solely on that officer's identification, (3) the State never established that the officer pursuing defendant was in a police uniform, and (4) his PSMV conviction is a lesser included offense of aggravated PSMV and that both the aggravated fleeing or attempting to elude a peace officer and fleeing and eluding were based on the same act of fleeing that officer. For the reasons that follow, we affirm and remand for correction of the mittimus.

¶ 2                                I. BACKGROUND

¶ 3        Defendant's arrest and subsequent trial stem from events that occurred on November 10, 2019, when he was arrested and charged with aggravated PSMV, simple PSMV, and two counts of aggravated attempting to flee or elude a peace officer.

¶ 4                                    A. Trial

¶ 5        Terry Hobson testified for the State that on November 7, 2019, he owned a gray 2007 Ford Edge. On that day, he was at a gas station in Riverdale. He left the car running while he went inside to pay for the gas, and while returning to his car, he saw two black males in his vehicle driving away. Hobson was unable to see the faces of the men that took his car. He called the police and reported the car stolen. On cross-examination, Hobson stated that defendant was one of the men in his car that night, but he admitted that he did not give any identifying information or description to the Riverdale police. Hobson next saw his car on November 10, 2019, at the South Holland car pound. The car was very damaged, the airbags were deployed, and all of his personal property was missing from the car. Hobson identified defendant in court

as someone he recognized from around the neighborhood. Hobson stated that defendant did not have permission to be in possession of his 2007 Ford Edge on November 10, 2019.

¶ 6        Chicago police officer Matthew Parisi testified that during the evening of November 9 and early morning hours of November 10, 2019, he was assigned to the Chicago Police Department, Fifth District,[1] and was on duty as a tactical unit officer. He was working with his partner, Officer Steven Kotrba, and their duties included responding to shootings and gang activity in the area. Both he and his partner were dressed in plain clothes but were wearing badges and bulletproof vests with designators indicating that they were Chicago police. Officer Parisi stated that they were in an unmarked police vehicle that was equipped with lights and sirens, and he rode in the front passenger seat.

¶ 7        Officer Parisi testified that he and his partner were responding to a ShotSpotter alert in the area of 116th Street and Prairie Avenue. They proceeded to the area heading north from 119th Street. They arrived at the intersection of 116th Street and Michigan Avenue at approximately 12:03 a.m., and Officer Parisi saw a dark-colored Ford Edge stopped at the intersection. The police vehicle was on Michigan Avenue facing north, and the Ford Edge was on 116th Street, facing west. Office Parisi testified that he had an unobstructed view of the driver of the Ford Edge, and the area was illuminated by numerous streetlights. Officer Parisi identified defendant in court as the person he saw in the driver's seat of the Ford Edge.

¶ 8        Officer Parisi testified that defendant looked in his direction, then moved his body consistent with placing something under the driver's seat. Defendant then accelerated and turned in front of the police vehicle and continued south on Michigan Avenue at a high rate of

---

[1]The Fifth District is located at 727 East 111th Street in Chicago.

speed. Officer Parisi turned and recorded the license plate of the Ford Edge, while Officer Kotrba made a U-turn, activated the lights and sirens, and pursued the Ford Edge. Officer Parisi ran the license plates of the Ford Edge and learned that it was stolen. He testified that the police vehicle was traveling approximately 60 miles per hour (mph) to catch defendant and that the speed limit in the area was 35 mph. During the chase, Officer Parisi saw defendant disregard a stop sign at 117th Street and Michigan Avenue, as well as a solid red light at 119th Street and Michigan Avenue. The officers continued pursuing the Ford Edge until they received an order to terminate the chase due to it becoming a threat to the public. Officer Kotrba stopped the police vehicle, and Officer Parisi saw defendant continue to flee and enter the Bishop Ford Expressway. Officer Parisi further testified that, later that morning, he and Officer Kotrba went to South Holland, Illinois, where they saw the dark colored Ford Edge had crashed in a strip mall. He also saw defendant in the back of an Illinois State Police squad car and identified him on the scene as the driver of the Ford Edge.

¶ 9    On cross-examination, Officer Parisi testified that he looked at defendant for three to four seconds, that defendant looked directly at the police vehicle, and that he recognized defendant from a prior arrest in 2018 that defendant had in the same district. Officer Parisi acknowledged that the Ford Edge was never fingerprinted and that there may have been other individuals in the Ford Edge.

¶ 10    South Holland police officer Robert Flores testified that he was on duty in the early morning hours of November 10, 2019, and received a dispatch regarding a vehicle chase coming through his area. He was on patrol and was in full police uniform. Officer Flores testified that he observed the Ford Edge traveling at a high rate of speed southbound on State Street and he pursued the vehicle at approximately 1:15 a.m. Officer Flores lost sight of the

vehicle shortly thereafter and terminated his pursuit. However, he saw the vehicle again a short time later after it crashed into another vehicle near a strip mall at 162nd Street and South Park Avenue in South Holland. The gray Ford Edge was subsequently towed to the South Holland impound lot. Officer Flores did not make any arrests that night, but he saw defendant in custody following the crash. On cross-examination, Officer Flores admitted that he did not see the accident or who was driving the Ford Edge.

¶ 11    The State requested a continuance to bring in the Illinois State Police officers as witnesses, but they did not appear at the next court date, and the trial court denied the State's motion for a second continuance. The State admitted its exhibits into evidence and rested. Defendant moved for a directed finding, which was denied. Defendant then rested without presenting any evidence after being admonished of his right to testify.

¶ 12    The trial court found defendant guilty on all counts, finding that the police officers testified credibly. The court noted that Officer Parisi saw defendant, recognized him, and identified him in court as the driver of the Ford Edge. The court also noted that Officer Parisi testified that he was wearing designators indicating that he was a police officer on the night of the pursuit and further that defendant was detained in custody in the area of the Ford Edge following the crash.

¶ 13                                B. Posttrial Proceedings

¶ 14    Following trial, on December 16, 2020, defendant indicated to the trial court that he wished to file a claim of ineffective assistance of counsel against his trial counsel. Defendant also stated that he wished to proceed *pro se* and that he had other motions for a new trial, which he later filed. In his various motions, defendant alleged that his trial counsel was ineffective for (1) insufficiently communicating with defendant while he was in custody pending trial, (2) coercing defendant not to testify at trial, (3) inadequately investigating and preparing for

trial, (4) not objecting to Officer Parisi's testimony about defendant's 2018 arrest, and (5) not impeaching Officer Parisi with defendant's 2018 arrest report and complaints filed against Officer Parisi.The trial court continued the matter for a *Krankel* hearing (see *People v. Krankel*, 102 Ill. 2d 181 (1984)).

¶ 15        On February 10, 2021, defendant's trial counsel moved to withdraw because defendant filed a complaint against him with the Attorney Registration and Disciplinary Commission, which the trial court granted. The case was continued for defendant to obtain new counsel, but the public defender was subsequently appointed to represent defendant for posttrial motions and sentencing at defendant's request. Posttrial counsel filed an amended motion for a new trial in August 2021, alleging that the State failed to prove defendant guilty beyond a reasonable doubt and that his trial counsel coerced him into not testifying, failed to sufficiently communicate with defendant prior to trial, inadequately investigated the case, failed to object to improper testimony, and failed to impeach Officer Parisi with defendant's 2018 arrest reports, which showed that he was not involved with defendant's 2018 arrest.

¶ 16        The trial court conducted a pre-*Krankel* inquiry and held a hearing on all of defendant's motions on September 29, 2021. Defendant argued that trial counsel's performance was deficient particularly for not impeaching Officer Parisi with defendant's 2018 arrest reports, which showed that Parisi was not an arresting or assisting officer. Defendant argued that the court could infer that Officer Parisi lied about recognizing defendant and then found him not credible. He also argued that a motion to suppress that testimony could have been granted based on that inference and should have been filed by trial counsel. There was no argument made about any alleged discovery violations by the State, as now raised on appeal.

¶ 17        In response, the State argued that Officer Parisi did not lie, as he never stated that he was involved in defendant's 2018 arrest. The State also argued that trial counsel could not have been ineffective for failing to impeach Officer Parisi with defendant's 2018 arrest reports because counsel did not know before trial that the officer would testify that he knew defendant from a prior arrest.

¶ 18        The trial court denied defendant's motion for new trial, noting that an alleged lack of credibility was not a legal basis for filing a motion to suppress, and further found that defendant's arguments amounted to a claim that trial counsel should have further cross-examined Officer Parisi on his identification of defendant. The trial court also rejected defendant's argument that counsel had not communicated with defendant, as it saw trial counsel talking with defendant in court. The court ultimately found that trial counsel was prepared and sufficiently cross-examined each witness.

¶ 19        The case moved to sentencing, where evidence was presented in aggravation and mitigation, as well as arguments from the State and defense. Defendant told the court that he wished to be heard, and he was sworn in. Defendant stated that he wished to proceed *pro se* and made a verbal claim of ineffective assistance of counsel against posttrial counsel and filed a motion in support. Sentencing was continued so that defendant's *pro se* posttrial motion could proceed, and defendant filed a second *pro se* motion alleging ineffective assistance of counsel.

¶ 20        On January 27, 2021, the trial court heard defendant's *pro se* arguments on his claims of ineffective assistance of counsel as to both trial counsel and posttrial counsel, which the court described as a *Krankel* hearing. Defendant raised the same arguments as in his initial motion in reference to trial counsel's ineffectiveness, and the trial court again found that defendant

had not made a *prima facie* showing of ineffective assistance of counsel to warrant further hearings. The trial court then clarified that the hearing was a pre-*Krankel* inquiry and that it did not find any indication of ineffectiveness.[2]

¶ 21   Defendant was then sentenced to four years' imprisonment for aggravated PSMV, three years' imprisonment for PSMV, three years' imprisonment for aggravated fleeing and eluding, and two years' imprisonment for fleeing and eluding. The trial court stated that the sentences were concurrent and merged with each other for a total prison term of four years.

¶ 22   This timely appeal followed.

¶ 23                                  II. ANALYSIS

¶ 24   On appeal, defendant contends that (1) his trial counsel was ineffective for failing to challenge Officer Parisi's identification testimony and failing to move for discovery sanctions or seek a continuance to rebut the testimony, (2) he was not proven guilty beyond a reasonable doubt where his conviction rested solely on Officer Parisi's identification, (3) the State never established that the officer pursuing defendant was in a police uniform, and (4) his PSMV conviction is a lesser included offense of aggravated PSMV and the aggravated fleeing or attempting to elude a peace officer and fleeing and eluding were based on the same act of fleeing Officer Parisi. We will examine each of defendant's contentions below.

¶ 25                        A. Ineffective Assistance of Counsel

¶ 26   Defendant first contends that, where his conviction rests "solely" on Officer Parisi's identification of him and was deemed reliable because of Parisi's prior familiarity of defendant,

---

[2]Although the trial court did not explicitly indicate that this was defendant's second pre-*Krankel* inquiry, the record itself establishes that this was a second preliminary investigation into defendant's ineffective assistance of counsel claims and no full *Krankel* hearing was held after either pre-*Krankel* inquiry.

defense counsel was ineffective for failing to impeach the officer's testimony, move for discovery sanctions against the State for its failure to disclose Parisi's identification statement, and request a short recess or continuance to secure defendant's 2018 arrest records to refute Parisi's testimony.

¶ 27     A criminal defendant has the right to the effective assistance of counsel under both the United States and Illinois Constitutions. See *Strickland v. Washington*, 466 U.S. 668, 690-91 (1984). In determining whether a defendant was denied effective assistance of counsel, this court applies the familiar two-prong test set forth in *Strickland*. A defendant must demonstrate that (1) trial counsel's representation was deficient and (2) the deficient performance prejudiced defendant. *People v. Burnett*, 2019 IL App (1st) 163018, ¶ 9. If a defendant fails to establish either prong, his claim of ineffective assistance of counsel fails. *People v. Colon*, 225 Ill. 2d 125, 135 (2007).

¶ 28     To establish deficient performance, the defendant must show that his attorney's performance fell below an objective standard of reasonableness. *People v. Thomas*, 2017 IL App (4th) 150815, ¶ 10 (citing *People v. Evans*, 209 Ill. 2d 194, 219 (2004)). Effective counsel refers to competent, not perfect, representation. *People v. Palmer*, 162 Ill. 2d 465, 476 (1994). To establish the second prong of *Strickland*, a defendant must show that, but for counsel's unprofessional errors, there is a reasonable probability that the result of the proceeding would have been different. *Thomas*, 2017 IL App (4th) 150815, ¶ 11 (citing *People v. Houston*, 229 Ill. 2d 1, 4 (2008)). A "reasonable probability" has been defined as a probability that would be sufficient to undermine confidence in the outcome of the trial. *Id.* While the defendant must satisfy both prongs to prevail, the reviewing court may analyze the facts under either prong first, and if it deems that the standard for that prong is not satisfied, it need not consider the

other prong. *People v. Morris*, 2014 IL App (1st) 130152, ¶ 33. We analyze claims of ineffective assistance of counsel by considering the entire record. *Burnett*, 2019 IL App (1st) 163018, ¶ 9. The ultimate question of whether counsel's actions support a claim for ineffective assistance of counsel is subject to *de novo* review on appeal. *People v. Max*, 2012 IL App (3d) 110385, ¶ 64. However, if a trial court has reached a determination on the merits of defendant's ineffective assistance of counsel claim, we will reverse only if the trial court's action was manifestly erroneous. *People v. Tolefree*, 2011 IL App (1st) 100689, ¶ 25 (citing *People v. McCarter*, 385 Ill. App. 3d 919, 941 (2008)). "Manifest error" is error that is clearly plain, evident, and indisputable. *Id.* (citing *People v. Morgan*, 212 Ill. 2d 148, 155 (2004)).

¶ 29        We give substantial deference to an attorney's decisions as there is a strong presumption that an attorney acted adequately. *People v. Steele*, 2014 IL App (1st) 121452, ¶ 38. A defendant must overcome the strong presumption that the challenged action or inaction might have been the product of sound trial strategy. *Id.* Every effort must be made to eliminate the effects of hindsight, to reconstruct the circumstances of challenged conduct, and to evaluate the conduct from counsel's perspective at the time. *Strickland*, 466 U.S. at 689. Because effective assistance refers to competent and not perfect representation, mistakes in trial strategy or judgment will not, standing alone, render the representation incompetent. *Steele*, 2014 IL App (1st) 121452, ¶ 38.

¶ 30        As noted above, defendant makes several claims of trial counsel's ineffectiveness: (1) failure to impeach Officer Parisi's testimony with the arrest report because the arrest report did not mention the officer's prior familiarity with defendant, (2) failure to move for discovery sanctions against the State for failing to disclose that Officer Parisi had previously encountered defendant in 2018, and (3) failure to move for a short recess or continuance to investigate

Officer Parisi's testimony and to obtain defendant's 2018 arrest records to refute the officer's claim that he knew defendant from his 2018 arrest. We shall examine each below.

¶ 31　　Upon examination of the record, we find that defendant's claims of ineffective assistance of counsel are without merit, as he has not established that the outcome of his trial would have been different were it not for the complained-of errors.

¶ 32　　With respect to defendant's claim that trial counsel was ineffective for failing to impeach Officer Parisi's testimony with the arrest report that did not mention any prior familiarity with defendant, this court has consistently held that a lack of details in an arrest report does not render an officer's testimony inconsistent and that defense counsel is not ineffective for failing to impeach the officer about the absent details. *Morris*, 2014 IL App (1st) 130152, ¶¶ 44-45 (citing *People v. Vasquez*, 368 Ill. App. 3d 241, 256 (2006)). Accordingly, we find that the lack of detail in the arrest report regarding Officer Parisi's prior knowledge of defendant from a prior arrest was not a basis for impeaching the officer; thus trial counsel was not ineffective for failing to cross-examine Officer Parisi regarding the arrest report.

¶ 33　　Defendant's next claim of ineffective assistance of trial counsel is based on counsel's failure to move for discovery sanctions against the State for failing to disclose that Officer Parisi had previously encountered defendant in 2018. He contends that the State's failure to disclose Officer Parisi's statement prior to trial was a violation of Illinois Supreme Court Rule 412 (eff. Mar. 1, 2001). Defendant argues that, because his conviction was solely based on Officer Parisi's identification of him, this evidence should have been suppressed and its admission at trial amounted to error. We disagree for the reasons stated below.

¶ 34　　Rule 412(a)(i) provides that, upon written motion of defense counsel, the State shall disclose to defense counsel the names and last known addresses of persons whom the State

intends to call as witnesses, together with their relevant written or recorded statements, memoranda containing substantially verbatim reports of their oral statements, and a list of memoranda reporting or summarizing their oral statements. Ill. S. Ct. R. 412(a)(i) (eff. Mar. 1, 2001). Additionally, Illinois Supreme Court Rule 415(b) (eff. Oct. 23, 2020) places a continuing duty to disclose on the parties, providing that, if a party discovers additional material or information subject to disclosure, he or she must promptly notify the other party or his counsel of the existence of the additional information.

¶ 35    Here, while the record does not contain a copy of defendant's pretrial discovery request motion, a copy of the State's answer to defendant's discovery request is included. The State's answer to the discovery request motion indicated that discovery would include statements made by persons the State may call as witnesses. However, the record does not include any written or verbal statements made by Officer Parisi other than those reflected in the various documents related to defendant's arrest, including the arrest report and citations. The record is also silent as to whether the State knew that Officer Parisi was familiar with defendant from a prior arrest, as it was not mentioned during the State's opening statement. In the absence of evidence that the State had additional statements of Officer Parisi that it failed to disclose, it is highly unlikely that a motion for discovery sanctions would have succeeded, and thus defendant cannot show he was prejudiced by his counsel's failure to request them. See *Steele*, 2014 IL App (1st) 121452, ¶ 41.

¶ 36    Moreover, the report of proceedings reveals that Officer Parisi's prior familiarity with defendant was elicited by defense counsel on cross-examination in response to questioning related to Officer Parisi's ability to observe and identify defendant. The State subsequently commented on this evidence during its closing argument. It is well settled that, where defense

counsel elicits particular testimony on cross-examination, the defendant cannot later complain about that which is elicited. *People v. Hambrick*, 68 Ill. App. 3d 447, 451 (1979); *People v. Taylor*, 357 Ill. App. 3d 220, 227 (2005) (when a defendant procures, invites, or acquiesces in the admission of evidence, even though the evidence is improper, he cannot contest the admission on appeal (citing *People v. Bush*, 214 Ill. 2d 318, 332 (2005))). As such, this cannot serve as the basis for an ineffective assistance of counsel claim.

¶ 37    Defendant also contends that trial counsel was ineffective for failing to request a short recess or continuance to investigate Officer Parisi's testimony and to obtain defendant's 2018 arrest records to refute the officer's claim that he knew defendant from his 2018 arrest. The record reveals that defendant attached a copy of his 2018 arrest report to his *pro se* posttrial motion for ineffective assistance of counsel that was presented to the trial court for review. Defendant's July 7, 2018, arrest report indicates that the arresting officers were on a gang suppression mission and observed "offender" walking in an alley with a backpack on in an area of recent shootings. The reporting officer knew the offender to be defendant and knew his criminal history. A loaded gun was subsequently recovered after defendant was detained, and he was charged with aggravated unlawful use of a weapon without possession of a firearm owner's identification or conceal and carry card. The arresting and reporting officers were Officers Dicera and Ramos. The 2018 arrest report and the arrest report for the case at bar both indicate that defendant was processed at the 727 East 111th Street police station.

¶ 38    While defendant is correct that the 2018 arrest report does not indicate Officer Parisi's involvement with his arrest, the arrest report alone does not conclusively establish that Officer Parisi was not familiar with defendant. Officer Parisi's testimony on cross-examination was that "[h]e was attempting to conceal something, looked right at us, and I recognized Mr. Isreael

- 13 -

Davis from a prior arrest in 2018 he had in the same district." Officer Parisi did not testify that he was involved in defendant's prior arrest; thus it is therefore unclear how the 2018 arrest report, standing alone, would have changed the outcome of defendant's case, necessary to establish prejudice under *Strickland*. See *Colon*, 225 Ill. 2d at 135.

¶ 39    In short, all of defendant's claims of ineffective assistance of counsel fail because he has not established prejudice. See *People v. Johnson*, 2021 IL 126291, ¶ 54 (an error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment). *Strickland* asks whether it is "reasonably likely" the result would have been different; a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different is a " 'probability sufficient to undermine confidence in the outcome.' " *Id.* (quoting *Strickland*, 466 U.S. at 694). *Strickland* requires a defendant to "affirmatively prove" that prejudice resulted from counsel's errors. *Strickland*, 466 U.S. at 698. Satisfying the prejudice prong requires a showing of actual prejudice, not simply speculation that defendant may have been prejudiced. *Johnson*, 2021 IL 126291, ¶ 55.

¶ 40    Contrary to defendant's assertions on appeal, his conviction did not rest solely on Officer Parisi's identification of him. The evidence presented by the State established that on November 7, 2019, Hobson's gray Ford Edge was stolen by two individuals from a gas station in Riverdale. On November 10, 2019, Officer Parisi and his partner were on patrol near 116th Street and Michigan Avenue when they heard a report of shots fired from the ShotSpotter in the vicinity. The police vehicle arrived at the intersection of 116th Street and Michigan Avenue at the same time as a gray Ford Edge with three people inside. The gray car was facing west, to the right of the officers' vehicle. Officer Parisi was on the passenger side and testified that

he was clearly able to see the driver of the vehicle. Officer Parisi saw the driver look over at the police vehicle, duck down, and make a motion like he was putting something under the seat before quickly turning in front of the officers and driving off at a high rate of speed. The officers activated their emergency equipment and pursued the vehicle, but it did not stop. The officers also checked the license plate of the vehicle and learned that it was reported stolen three days prior. The officers pursued the vehicle in a high-speed chase to the expressway, where they stopped the pursuit for safety reasons. However, Officer Flores from South Holland subsequently pursued the vehicle after notification of the chase in South Holland. Although he lost sight of the vehicle, shortly thereafter, he learned that the vehicle crashed near a strip mall in South Holland. When Officer Flores arrived at the scene, defendant and another person were handcuffed in the back of an Illinois State Police squad car, which had responded to the crash scene. It was reported that three individuals fled from the crashed vehicle before being apprehended by the state police. A gun was recovered from the vehicle. When Officer Parisi arrived at the scene, he identified defendant as the driver of the vehicle.

¶ 41    A conviction can be sustained upon circumstantial evidence as well as direct, and to prove guilt beyond a reasonable doubt does not mean that the factfinder must disregard the inferences that flow normally from the evidence before it. *People v. Saxon*, 374 Ill. App. 3d 409, 417 (2007). Circumstantial evidence is proof of facts or circumstances that give rise to reasonable inferences of other facts that tend to establish the guilt or innocence of defendant. *Id.* The trier of fact does not have to be satisfied beyond a reasonable doubt of every link in the chain of circumstantial evidence. *Id.* It is sufficient if all the evidence taken as a whole satisfies the trier of fact beyond a reasonable doubt. *Id.* An inference is a factual conclusion that can rationally be drawn by considering other facts. *Id.* at 416. Thus, an inference is merely a deduction that

the factfinder may draw in its discretion, but it is not required to draw as a matter of law. *Id.* Additionally, flight is generally considered some evidence of a guilty mind. *People v. Aljohani*, 2021 IL App (1st) 190692, ¶ 64. In particular, a defendant's flight from police also indicates consciousness of guilt. See *People v. Ross*, 2019 IL App (1st) 162341, ¶ 32.

¶ 42    We find that the evidence presented in this case was sufficient to sustain defendant's conviction. The trial evidence, including the high-speed pursuit of the stolen vehicle which crashed near a strip mall with defendant subsequently being captured attempting to flee from the scene, would have been sufficient to sustain defendant's conviction even without Officer Parisi's statement that he was familiar with defendant because of his prior arrest in 2018. As such, defendant has not shown a reasonable probability that the result of his trial would have been different without the claimed errors by trial counsel. We conclude that defendant's claims of ineffective assistance of counsel must fail, as he cannot establish prejudice, and that the trial court's findings regarding defendant's ineffective assistance of counsel claims were not manifestly erroneous.

¶ 43                 B. Sufficiency of the Evidence (Defendant's Issues II and III)

¶ 44                        1. Aggravated Possession of a Stolen Motor Vehicle

¶ 45    Defendant next contends that the State failed to prove him guilty of aggravated PSMV where it did not establish that he was the driver of the stolen vehicle. He argues that the poor conditions of Officer Parisi's view of the driver and his "momentary glimpses" could not have allowed for a positive identification of defendant as the driver. Defendant's claim is without merit.

¶ 46    When reviewing the sufficiency of the evidence on appeal, the question is whether, after reviewing the evidence in the light most favorable to the State, any rational trier of fact could

have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979). We will not substitute our judgment for that of the trier of fact on issues concerning the weight of the evidence or the credibility of the witnesses. *People v. Robinson*, 2013 IL App (2d) 120087, ¶ 11. We may reverse a conviction if the evidence is so unsatisfactory as to justify a reasonable doubt of the defendant's guilt or when proof of an element is wholly lacking. *Id.*

¶ 47    To prove defendant guilty of aggravated possession of a stolen motor vehicle, as charged here, the State must prove that defendant was the driver or operator of a vehicle, he was not entitled to possession of that vehicle, and he knew it was stolen or converted. 625 ILCS 5/4-103.2(a)(7)(A) (West 2018). The State must also prove that he was given a signal by a peace officer directing him to bring the vehicle to a stop and that he willfully failed or refused to obey the direction, increased his speed, extinguished his lights, or otherwise fled or attempted to elude the officer. *Id.* The State is not required to prove ownership of a stolen vehicle (*People v. Smith*, 226 Ill. App. 3d 433, 438 (1992)); however, the State must prove that someone other than the defendant had a superior interest in the car identified in the charging instrument (*People v. Fernandez*, 204 Ill. App. 3d 105, 109 (1990)).

¶ 48    Here, defendant's argument again focuses on Officer Parisi's identification of him as the driver. As noted above, Officer Parisi testified that, when he first saw the driver of the vehicle, he was in the passenger seat of the police vehicle and the stolen vehicle was at the same intersection to his right, with the driver clearly visible to him. Contrary to the circumstances presented in *In re O.F.*, 2020 IL App (1st) 190662, ¶¶ 25-38, cited by defendant, Officer Parisi's view of defendant was not made from across an intersection, through the glare of two cars' windows, but was rather made while sitting in the passenger side of the police vehicle

where he could see the stolen vehicle and its driver directly to his right. Also, Officer Parisi had a second opportunity to view the driver when the stolen vehicle turned in front of the police vehicle to travel south on Michigan Avenue. Although he only saw the driver for a few moments altogether before the driver turned in front of the police vehicle and took off at a high rate of speed, Officer Parisi identified defendant at the crash site as the driver of the vehicle and identified him in court as the driver of the vehicle. Officer Parisi's inability to clearly identify the passenger is reasonable considering that the passenger was farther away from his line of sight. The trial court, in its position as factfinder, found that the various officers' testimonies were credible. Viewing the evidence in the light most favorable to the State, we find that it was sufficient to establish that defendant was the driver of the stolen vehicle.

¶ 49                    2. Aggravated Fleeing or Attempting to Elude a Peace Officer

¶ 50      Likewise, defendant's claim that his conviction for aggravated fleeing or attempting to elude a peace officer should be reversed because the State failed to prove the essential element that the officer was wearing a "police uniform" is also without merit.

¶ 51      To prove the offense of aggravated fleeing or attempting to elude a peace officer, the State must prove that the driver fled or attempted to elude a peace officer after being given a visual or audible signal by a peace officer in the manner prescribed by the Illinois Vehicle Code. 625 ILCS 5/11-204.1(a) (West 2018). That section further mandates that the officers giving such signal shall be in police uniform and the vehicle shall display illuminated oscillating, rotating, or flashing red or blue lights. *Id.*

¶ 52      Here, Officer Parisi testified that he and his partner were in an unmarked police vehicle equipped with emergency equipment consisting of lights and sirens when they encountered the stolen vehicle. Both he and his partner were in plain clothes; however, Officer Parisi

specifically testified that he was wearing a bulletproof vest with his designators on it and had his badge on. Officer Parisi and his partner pursued the stolen vehicle with emergency lights and sirens activated. The record does not indicate whether Officer Flores or the Illinois State Police officers that ultimately arrested defendant were in full police uniform or in plain clothes.

¶ 53    Defendant argues that there was no evidence that the officers who stopped him were in uniform and the fact that Officer Parisi wore a bulletproof vest over his civilian clothes did not demonstrate the "distinctive" or "characteristic" design of a police uniform.

¶ 54    This exact argument has been rejected by this court in *People v. Cavitt*, 2021 IL App (2d) 170149-B.[3] In *Cavitt*, the defendant was convicted of aggravated fleeing or eluding a police officer and argued that the State failed to prove the essential element that the officer was wearing a police uniform. *Id.* ¶ 165. The *Cavitt* court, following *People v. Maxey*, 2018 IL App (1st) 130698-B, ¶¶ 120-21, and *People v. Williams*, 2015 IL App (1st) 133582, ¶¶ 14-16, considered this to be an issue of statutory construction and noted that the court's objective involves ascertaining and carrying out the true intent and meaning of the legislature evidenced by the language used. *Cavitt*, 2021 IL App (2d) 170149-B, ¶¶ 167, 169. The court noted that the statute has been strictly construed. *Id.* ¶ 169; see *Maxey*, 2018 IL App (1st) 130698-B, ¶¶ 120-21 (reversing the defendant's conviction for aggravated fleeing or attempting to elude a peace officer when the evidence did not show what the officers were wearing at the time of the stop). The court concluded that a vest with police markings can, under certain

---

[3]This same argument was also rejected by this court in *People v. Brown*, 2020 IL App (1st) 181511-U, based on the reasoning set forth in the original *Cavitt* decision (*People v. Cavitt*, 2019 IL App (2d) 170149), which was subsequently vacated pursuant to a supervisory order of the Illinois Supreme Court to reconsider a different issue in the case (No. 125398 (Ill. Nov. 18, 2020)). We note however that we reversed the defendant's conviction in *People v. Smith*, 2020 IL App (2d) 180321-U, where the State presented no evidence of whether the police officer in question was wearing a police uniform.

circumstances, constitute a police uniform under the statute and that the totality of the evidence here was sufficient to establish this element of the offense and that the statute includes this requirement to ensure that the defendant is fleeing or eluding an actual police officer. *Cavitt*, 2021 IL App (2d) 170149-B, ¶ 174.

¶ 55    Defendant urges this court to reject the holding in *Cavitt* as not binding and also because it is factually distinguishable. In *Cavitt*, the defendant was apprehended by a nonundercover police officer who ordered defendant to stop his car and who was in defendant's range of vision, wearing a black tactical vest with police markings and a police badge around his neck. *Id.* ¶ 175. We are not persuaded by defendant's argument.

¶ 56    Viewing the evidence in the light most favorable to the State, we find that the State presented sufficient evidence that Officer Parisi was in a police uniform when he and his partner attempted to curb the stolen vehicle during the chase with their emergency equipment activated. Officer Parisi testified that he was in civilian clothes, but he was wearing a bulletproof vest with his designations on it and had his badge. It is of no consequence what the other officers were wearing; the initial instance of the offense occurred when Officer Parisi and his partner attempted to curb the vehicle and defendant did not stop but instead led the officers on a high-speed chase that ultimately ended when the vehicle crashed into a building.

¶ 57        C. Lesser Included Offense/Multiple Convictions From the Same Act

¶ 58    Finally, defendant contends that, because his conviction of simple PSMV is a lesser included offense of aggravated PSMV and because his two convictions of aggravated fleeing or attempting to elude a police officer were based on the same act of fleeing Officer Parisi, the additional convictions are improper.

¶ 59        The State concedes that under the one-act, one-crime rule, where more than one offense is carved from the same physical act and the lesser offense is a lesser-included offense of the greater offense, the defendant should be sentenced for the most serious offense; the less serious offenses should be vacated. *People v. Lucious*, 2016 IL App (1st) 141127, ¶ 57. The State thus agrees that this court should direct the trial court to correct the mittimus to conform to its oral pronouncement merging the PSMV into aggravated PSMV and merging the two separate counts of aggravated fleeing and eluding a peace officer.

¶ 60        Accordingly, we remand to the trial court for correction of the mittimus to reflect that defendant's convictions are for one count of aggravated PSMV and one count of aggravated fleeing and attempting to elude a peace officer, with concurrent sentences of four years and two years respectively. *People v. Jones*, 376 Ill. App. 3d 372, 395 (2007) (oral pronouncement controls when there is a conflict).

¶ 61                                III. CONCLUSION

¶ 62        For the foregoing reasons, we affirm the judgment of the circuit court of Cook County and remand for correction of the mittimus as directed herein.

¶ 63        Affirmed and remanded with directions.

*People v. Davis*, 2023 IL App (1st) 220231

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 20-CR-02786; the Hon. Adrienne Davis, Judge, presiding. |
| **Attorneys for Appellant:** | James E. Chadd, Douglas R. Hoff, and Elizabeth A. Botti, of State Appellate Defender's Office, of Chicago, for appellant. |
| **Attorneys for Appellee:** | Kimberly M. Foxx, State's Attorney, of Chicago (Enrique Abraham, Noah Montague, and Taylor Dall, Assistant State's Attorneys, of counsel), for the People. |