2025 IL App (1st) 231749-U

Fourth Division
Filed March 31, 2025

No. 1-23-1749

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) | Appeal from the Circuit Court of Cook County |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 20400168201 |
| XAVIER WATKINS, | ) ) | The Honorable John Wellington Wilson, |
| Defendant-Appellant. | ) ) ) | Judge, presiding. |

JUSTICE OCASIO delivered the judgment of the court.
Presiding Justice Rochford and Justice Hoffman concurred in the judgment.

**ORDER**

¶ 1    *Held*:  Defendant's convictions are affirmed where the evidence was sufficient to prove that (1) defendant was operating a motor vehicle and (2) the officer who signaled defendant to stop was wearing a police uniform.

¶ 2    Following a bench trial, the trial court found defendant, Xavier Watkins, guilty of obstructing a police officer, driving on a revoked or suspended license, fleeing or attempting to elude a peace officer, driving on a sidewalk, driving without headlights, and driving without valid registration. Watkins was sentenced to 36 days of incarceration. Watkins now appeals from his convictions for fleeing or attempting to elude, driving on a revoked or suspended license, driving without headlights, and driving without a valid registration.

¶ 3                                    I. BACKGROUND

¶ 4        The only witness who testified at trial was Maywood Police Department Officer Mullaney. He testified that on March 11, 2022, at approximately 10:30 p.m., he and his partner, Officer Lukasik, were on patrol in an unmarked police vehicle. Officer Lukasik was driving. Officer Mullaney was unable to recall what type of vehicle they were patrolling in on that day, but he believed it was a blue Dodge Charger. He testified, without further elaboration, that they were wearing "[p]lain clothes with exterior police body armor bearing police insignias."

¶ 5        The officers were driving northbound on 8th Avenue when they saw Watkins, whom Officer Mullaney identified in court, sitting on an all-terrain vehicle (ATV) in a driveway. Officer Mullaney described the ATV as a "four wheeled motorized vehicle." At that point, the court *sua sponte* took "judicial notice of what an ATV is." The defense did not object. As the officers approached, Watkins "drove away on the ATV," headed eastbound on Congress Street. The officers turned the corner and followed him. After determining that the ATV did not have a registration or lights affixed to it, the officers activated their vehicle's lights and sirens to make a traffic stop. Watkins looked back and made eye contact with Officer Mullaney, but he did not stop. Instead, Watkins fled southbound on 7th Avenue, went up a curb, drove through some front lawns, and came to a stop, at which point he got off the ATV and fled on foot, abandoning it. The officers got out of their car and pursued Watkins on foot. During the chase, they verbally identified themselves as police officers and ordered Watkins to stop. Watkins ran into his house, and, due to the nonviolent nature of the offense, the officers did not try to follow him inside. Instead, knowing Watkins's name from past contacts, Officer Mullaney ran it through LEADS and discovered that Watkins had previously had his license revoked. At that point, he called for a tow for the ATV. An inventory search did not locate any insurance information or a vehicle identification number.

¶ 6        The trial court found Watkins guilty of fleeing or attempting to elude, driving on a revoked or suspended license, driving without headlights, driving on a sidewalk, and driving without a valid registration. It acquitted him of driving without insurance.

¶ 7                                    II. ANALYSIS

¶ 8         Watkins argues that the State failed to prove him guilty of driving on a suspended or revoked license, driving without registration, driving without headlights, and fleeing or attempting to elude a peace officer because the evidence did not establish that the object he was driving was a motor vehicle. He further argues that the State failed to prove him guilty of fleeing or attempting to elude a peace officer because the officers were not wearing police uniforms. In assessing whether the evidence was sufficient to sustain a conviction, "a reviewing court's inquiry is 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " (Emphasis in original.) *People v. Bush*, 214 Ill. 2d 318, 326 (2005) (quoting *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979)). "Under this standard, 'a reviewing court must allow all reasonable inferences from the record in favor of the prosecution.' " *Bush,* 214 Ill.2d at 326 (quoting *People v. Cunningham*, 212 Ill. 2d 274, 280 (2004)).

¶ 9                                   A. Motor Vehicle

¶ 10        Watkins first argues that the State failed to prove that he was driving a "motor vehicle," an essential element of the offenses of driving a motor vehicle without lights, lacking a valid registration, driving with a suspended or revoked license, and fleeing or attempting to elude a peace officer. 625 ILCS 5/12-201(b), 3-402(a), 6-303(a), 11-204(a) (West 2022). Specifically, Watkins argues that the State's evidence was insufficient to establish that he was operating an object that qualified as a motor vehicle and that the trial court taking judicial notice of what an ATV is was insufficient for the State to carry its burden.

¶ 11        The Illinois Vehicle Code defines a motor vehicle as "[e]very vehicle which is self-propelled and every vehicle which is propelled by electric power obtained from overhead trolley wires, but not operated upon rails, except for vehicles moved solely by human power, motorized wheelchairs, low-speed electric bicycles, and low-speed gas bicycles." 625 ILCS 5/1-146 (West 2022). Watkins argues that Officer Mullaney's testimony that the object he was sitting on was a "four-wheel

motorized vehicle," was insufficient to prove that the object was a motor vehicle. Watkins contends that there was no evidence that the object was self-propelled or propelled using electricity from overhead wires, notes that the State did not introduce a photograph of the object, contends that the State failed to exclude the possibility that the object was a motorized wheelchair or low-speed powered bicycle, and highlights the absence of any testimony demonstrating how fast the object was moving during the chase. He also argues that the State failed to show that the object met the detailed statutory definition of an ATV. See *id.* § 1-101.8.

¶ 12      Viewed in the light most favorable to the State, we find that the evidence was sufficient to prove that the object Watkins was riding was a motor vehicle under the Vehicle Code. Officer Mullaney's testimony that it was a "motorized vehicle" and that Watkins "drove" it down a street, up a curb, and across one or more lawns supported a conclusion that it was a self-propelled vehicle. His testimony that it had four wheels excluded the possibility that it was any kind of bicycle. Whether or not the object fit the statutory definition of an ATV, Officer Mullaney's use of that label to describe it permitted an easy inference that it was not a motorized wheelchair—the two things are not easily confused—and, at any rate, the path it travelled and the fact that it was something that could be towed provided further support for the conclusion that it was not a motorized wheelchair. The State presented evidence sufficient to prove beyond a reasonable doubt that Watkins was operating a motor vehicle.

¶ 13                              B. Police Uniforms

¶ 14      Next, Watkins argues that his conviction for fleeing or attempting to elude a peace officer should be reversed because the evidence did not establish that either officer was wearing a police uniform when they gave him the signal to stop.

¶ 15      To prove the charge of fleeing or attempting to elude a peace officer, the State is required to prove beyond a reasonable doubt that the defendant disregarded a signal to stop given by an officer "in police uniform." 625 ILCS 5/11-204 (West 2004). The statute includes this requirement to ensure that the defendant is aware that the person ordering him to stop is an actual police officer.

*People v. Cavitt*, 2021 IL App (2d) 170149-B, ¶ 174. Nevertheless, because the officer's attire being a police uniform is an "essential element" of the offense, the State cannot meet its burden by showing that the defendant knew or should have known that the person giving the signal was, in fact, a police officer. *People v. Maxey*, 2018 IL App (1st) 130698-B, ¶¶ 120-121. A conviction cannot stand unless there is "proof that the police officers were in uniform." *Id.* (reversing conviction where the evidence failed to establish what the officers were wearing at the time of the stop).

¶ 16 Here, Officer Mullaney testified that he and his partner were wearing "[p]lain clothes with exterior police body armor bearing police insignia." Watkins's argument is, essentially, that this kind of attire is insufficiently distinctive or characteristic of police officers to qualify as a uniform. He acknowledges that this court has, in two recent published cases, found that officers wearing vests bearing police markings over street clothes were in police uniforms. *People v. Davis*, 2023 IL App (1st) 220231, ¶¶ 54-57; *Cavitt*, 2021 IL App (2d) 170149-B, ¶¶ 165-176. He argues that *Davis* and *Cavitt* are distinguishable because, in those cases, there was evidence that the officers were displaying badges. Here, there was no evidence that either officer had a badge on display, but we do not think that factual distinction warrants a different result. We agree with *Davis* and *Cavitt* that the State does not need to prove that the officer who gave the signal to stop was wearing "a *traditional* police uniform" (emphasis added) and that "a vest with police markings can, under certain circumstances, constitute a police uniform under the statute." *Cavitt*, 2021 IL App (2d) 170149-B, ¶ 174. Given that, when viewed in the light most favorable to the State, Officer Mullaney's description of his attire allowed a trier of fact to rationally conclude beyond a reasonable doubt that the officers from whom Watkins fled were wearing police uniforms.

¶ 17                                        III. CONCLUSION

¶ 18 The evidence, viewed in the light most favorable to the State, was sufficient to sustain Watkins's convictions. Thus, we affirm.

¶ 19 Affirmed.